(Decided November 1st, 1865.)

RICHARD HARDESTY, GEORGE W. HARDESTY, and others, *vs.* ALFRED S. TAFT, ODELL W. HILLEARY, and others, Officers of Registration, and others.

CONSTITUTIONAL LAW.—That part of the 28*th section of the* 3*rd Article of the Constitution of Maryland,* making it the duty of the General Assembly to enact public general laws in articles and sections, in the same manner as the Code is arranged, looks more to convenience in adapting the laws to codification, than to its operative effect; and a compliance with this provision is not essential to the validity of a public general law.

REGISTRATION LAW: EQUITY JURISDICTION: ACT OF 1865, CH. 174, SEC. 18.—The *Constitution, Art.* 1, *sec.* 2, provides, that after the General Assembly shall have passed an Act of Registration, and the same shall have *been carried into effect,* no person shall vote unless his name appears on the register, and the registration shall be evidence of the qualification of the voter. The Act of 1865, ch. 174, sec. 18, declares, that the judges of election shall not receive or deposit the ballot of any person until they have found his name on the list or register of qualified voters, and have checked it thereon. HELD:

1st. That if this is a valid, general law, and if registrars have been appointed for every county of the state and city of Baltimore, and have entered upon and are discharging their duties, the law is carried into effect, and no Court has the power, and such could not be the effect of any order or decree it might pass, to change the evidence of the voter's qualification in one section or county of the State, and clothe the judges of election therein with powers not conferred by the Legislature, but expressly taken away.

2nd. That whatever may be the effect, in a county or election district, of a registration of voters by officers not qualified as the law directs, it is certainly not the province of this Court to order, by injunction, an election therein, in a manner different from that designed by the law.

Hardesty, *et al., vs.* Taft, *et al.*

ACTS OF ASSEMBLY, CONSTRUCTION OF.—Laws to carry on the Government, are to receive a liberal construction to effectuate the objects designed; and if the Legislative purpose can be arrived at, in the absence of express language, that meaning is to be observed and obeyed. At all events, it would not be a safe or wise rule to substitute another intent equally if not more doubtful, in order—not to support the act of a public agent—but to annul it.

OATH OF OFFICE OF OFFICERS OF REGISTRATION, BEFORE WHOM TO BE TAKEN: ACT OF 1865, CH. 174, SEC. 1.—The *Code, vol.* 1, *Art.* 68, *secs.* 6 *and* 7, provides that all officers (other than those mentioned in the preceding sections) elected or appointed to any office of trust or profit under the Constitution and laws of the State, shall take and *subscribe* an oath of office (if in a county) before the clerk of the Circuit Court of the county, or before one of his sworn deputies; and the clerk shall procure and keep in his office a well-bound book, to be called the test book, in which the oath shall be printed or written conspicuously, and the person taking or subscribing the same, shall annex to his signature the title of the office to which he shall have been appointed or elected, and the date of his signature. The *registration Act of* 1865, *ch.* 174, *sec.* 1, requires the officers of registration to take the oath, and *subscribe the same in the book of registration for their respective wards or election districts,* without expressly specifying before what officer—HELD:

That the registrars under this law were properly qualified by taking and subscribing the oath in the registration books, before any one having authority to administer oaths.

REGISTRATION OF VOTERS: EQUITY JURISDICTION.—If the registrars have, in the execution of the law, misconceived their duty in any respect, or violated their trust, by propounding to applicants for registration any questions which a due examination into their qualification did not warrant, it is not for a Court of Equity to apply the remedy by injunction, and arrest their proceedings, because one or more persons may not have been fairly dealt with.

CONSTITUTIONAL LAW: DISQUALIFICATION OF OFFICERS: BILL OF RIGHTS, ART. 35.—On a bill filed for an injunction to restrain the proceedings of the officers of registration in a county, on the ground, among others, that certain of them were at the same time holding other State offices of trust and profit, in contravention of the 35th Article of the Bill of Rights—HELD:

1st. That to yield to such an application, would manifestly be stretching the sound discretion of the Court beyond all limits.

2nd. That even if the application were to arrest the particular proceedings of the persons alleged to be illegally exercising the functions of the office, the averments of the bill, resting upon proofs exhibited with them, should be distinctly supported by such proofs. And in this case the proof is defective, because the exhibits, while they show the appointments and quali-

65     v. 23.

Hardesty, *et al.*, *vs.* Taft, *et al.*

fications thereunder at other and anterior times, do not show or satisfy the Court that at the time of exercising their functions as officers of registra- tion, they were also in office under their other appointments.

3rd. That a presumption might fairly be raised in support of the continuance of Government, that if the offices were in conflict, a resignation of the one alleged to be the constitutional barrier to the other, had previously taken place.

4th. That a Court of Equity cannot be invoked to prevent the performance of political duties like those committed to the officers of registration under the law.

5th. That the willful, fraudulent or corrupt refusal of a vote by judges of election, or a like denial of registration by the officers appointed to regis- ter votes, can be adequately compensated for in damages at law.

6th. That the writ of injunction will not be awarded in doubtful or new cases, not coming within well established principles of equity.

7th. That each voter has a separate and distinct remedy for the willfully im- proper deprivation of his vote; and the joinder of others like circum- stanced or injured, as complainants in equity, on the ground of· avoiding a multiplicity of suits, will not avail to afford equitable relief.

APPEAL from the Circuit Court for Prince George's coun- ty:

This is an appeal from an order of the Judge of the Circuit Court for Prince George's county, sitting in equity, refusing to grant an injunction as prayed, against the Offi- cers of Registration for Prince George's county, the Judges of Election, and the clerk of the Circuit Court for said county.

The bill states that certain persons, giving their names, have been appointed by the Governor, and commissioned as Officers of Registration for the several election districts of Prince George's county, under the Act of 1865, ch. 174, who, under the pretended authority vested in them, made out lists of the legal and qualified voters of said county, copies of which lists are filed as Exhibit A.

It further states, that the complainants are white male citizens of the United States, above the age of twenty-one years, and that they have resided in the State of Maryland more than one year next preceding the ensuing election, to be held on the 7th day of November next, and more than

six months next preceding the said election in Prince George's county; that they have heretofore exercised the elective franchise; and that they have committed no act, by which their said citizenship, or their right to vote, could be or has been justly forfeited or impaired.

The bill further states, that the complainants applied to the Officers of Registration for the several election districts in which they reside, and demanded to have their names registered as legal and qualified voters; that they took the oath of allegiance required by the 4th section of Art. 1st of the Constitution, and the further oath that they would make true answers to such questions as the said officers might propound, touching their right of registration and voting; that they made satisfactory answers to such questions as were propounded to them, touching age, birth, residence, &c., and that after answering those questions, the said officers propounded the series of questions filed as Exhibit B, which questions, some of the complainants answered satisfactorily, while others refused to answer them for reasons stated.

The bill further states, that the Officers of Registration for the respective election districts, in which the complainants reside, have excluded their names from the list of legal and qualified voters; that numerous other citizens, who are entitled to be registered as legal voters, to the number of three or four hundred, learning of the illegal and arbitrary powers claimed and exercised by the said Officers of Registration, were deterred from making application for registration; and that unless this Court grants relief, there can be, hereafter, no election held in the county, such as is guarantied by Art. 7th of the Bill of Rights, but on the contrary, the right of the people to participate in the Legislature, as the best security of liberty and the foundation of all free government, will be destroyed, nor will every white male citizen having the qualifications prescribed by the Constitution, have the right of suffrage.

The bill further states, that the Officers of Registration

design to meet on the 31st of October and November 1st, when the lists will be finally closed; that they then design delivering one copy of said lists to the clerk of the Circuit Court, and another to the Judges of Election of the several election districts; that certain persons have been appointed Judges of Election, and that the said Judges are about to be governed in the reception of the votes, and their decision as to who are legal and qualified voters, by the said lists so furnished them, and design excluding from the exercise of the elective franchise, all those whose names are not found in the column of legal and qualified voters.

The bill then charges, that all the proceedings of said registrars are null and void; that they have acted without any legal authority, and that the said lists of voters should not be returned to the Judges of Election or the clerk, nor should the Judges of Election be governed by the same in the reception of votes, but they should conduct the election according to the Constitution and the Laws of the State, in force prior to the passage of the Act of 1865, ch. 174, and as if no list of registered voters had been made out; and the bill alleges various reasons in support of these charges, which need not be here stated.

The bill prays for the writ of injunction against the said Officers of Registration, enjoining and strictly prohibiting them from returning copies of their books or lists of qualified and registered voters to the clerk of the Circuit Court for said county, and the Judges of Election of the several election districts, and the writ of injunction against Frederick Sasscer, clerk of the Circuit Court for Prince George's county, enjoining and strictly prohibiting him from receiving a copy of the said books or lists of legal and qualified voters, and the writ of injunction against the Judges of Election for the said county, enjoining and strictly prohibiting them from receiving a copy of the said books or lists of qualified voters, and from regarding the said lists of legal and qualified voters, in determining who are legal and qualified voters, entitled to vote at the coming election,

and that they may be directed and commanded to conduct the said election on the 7th of November 1865, according to the Constitution and Laws in force prior to the passage of the Act of 1865, ch. 174, and as if the said law had not been passed, or the said lists of legal and qualified voters made out by the said Officers of Registration.

The Court below passed an order refusing the injunction, and from this order the present appeal was taken.

The cause was argued before Bowie, C. J., and Bartol, Goldsborough, Cochran and Weisel, J.

*Thomas G. Pratt* and *Daniel Clarke*, for the appellants :

It will be insisted, as charged in the bill, and to entitle the complainants to the injunction therein prayed :

1st. That the said Act of 1865, ch. 174, is null and void, and the appointment and acts of the said Officers of Registration under the said Act, are null and void, because the same is not enacted in articles and sections, in the same manner as the Code is arranged, in conformity with the requirements of Art. 3, sec. 28, of the Constitution.

In support of the above proposition, the solicitors for the appellants, refer to the argument and authorities in the argument of the appellant, in the case of *Anderson vs. Baker, et al.*, 23 *Md. Rep., infra*.    *Stewart vs. Mayor & C. C. of Balto.*, 7 *Md. Rep.*, 500.

2nd. The bill and accompanying exhibit, shews that the said Officers of Registration, did not qualify by taking and subscribing the oath of office before the clerk of the Circuit Court, or before one of his sworn deputies, as required by Art. 68, sec. 6, of the Code of Public Local Laws.

It will be insisted, that the declining or neglect of the said Officers of Registration, to take and subscribe the oath prescribed by the Constitution, for the period of thirty days from the day when the commission of such officers were received at the office of the clerk of the Circuit Court for said county, or within thirty days after receiving their

commissions, or notices of appointment, must be declared to be a refusal to accept said office, and their acts must be held to be without any authority or force. Art. 68, sec. 10, of the Code. Art. 1, sec. 8, of the Constitution.

3rd. It is further insisted, that the Act of 1865, ch. 174, vests in the Officers of Registration, judicial powers, in violation of Art. 4, part 1, sec. 1, of the Constitution, and in violation of Arts. 19th, 21st and 22nd, and that the acts of the said Officers of Registration, in the exercise of said judicial powers, are null and void, and without any legal authority. See appellants' brief in the case of *Anderson vs. Officers of Registration for Montgomery County*.

4th. The complainants further maintain, that the portion of Art. 1, sec. 4th, of the Constitution, which provides and enumerates the disqualifications which exclude the citizen from registration as a legal voter, and requires the taking of the voter's oath, is *ex-post facto*, and as such, prohibited and rendered null and void by the Constitution of the United States. The said Officers of Registration, had therefore no authority to require the party applying for registration to take the said oath, nor to exclude him from registration on account of his refusal to take it. See appellants' argument in the case of *Anderson vs. George W. Baker, et al.*, already referred to.

5th. It will be insisted, that the only construction which will relieve the 4th sec. of Art. 1st, of the Constitution, from the class of *ex-post facto* laws, is to construe the oath and the disqualifying clauses as only referring to and embracing acts done, or desires, &c., expressed, from and after the period of the date of the adoption of the Constitution. The said Officers of Registration, assuming this to be the true construction of the law, were therefore confined in their inquiry to acts done or desires expressed by the complainants, from and after the date of the adoption of the Constitution, and they had no right to exclude the complainants or any other citizens, from being registered as qualified voters, for acts done or desires expressed, before

the date of the adoption of the Constitution. *Butler vs. Boarman*, 1 *H. & McH.*, 371. *Shields vs. Miller*, 4 *G. & J.*, 1. *Gordon's Excr.*, *vs. Mayor & C. C. of Ballo.*, 5 *Gill.*, 231. *Baugher, et al., vs. Nelson*, 9 *Gill*, 302.

6th. It will be further argued, that the said Officers of Registration were confined in the questions which they had a right to propound to the complainants, by the true construction of the 5th section of the Act of 1865, ch. 174, to questions of birth, age, residence, &c., and that they had no right to propound to them, questions which might criminate them, or which interrogated them as to the commission of a crime; nor had they a right to propound the series of questions filed with the bill as exhibit B.

The said officers having no authority to propound to the complainants the said questions, they had therefore no legal right to exclude them from the list of legal and qualified voters, on account of their refusal to answer the said questions. See appellants argument in *Anderson vs. Baker, et al.*, before referred to.

7th. The complainants further contend, that even if the said Officers of Registration, had a right to propound the said questions referred to in Exhibit B, the said questions so far as they related to acts done or desires expressed, should have been confined in their scope and time, to a period from and after the date of the adoption of the Constitution. The said Officers of Registration had no authority to propound to the complainants any questions in relation to acts done, or desires expressed, before the date of the adoption of the Constitution. They had therefore no legal right to exclude these complainants from the list of legal and qualified voters, either because of their refusal to answer the said questions, or because of their committing any act or expressing a desire before the adoption of the Constitution, which, if committed afterwards, would disqualify them.

8th. It is further contended, that a number of the said Officers of Registration holding more than one office of

profit created by the Constitution and laws of this State, in violation of Art. 35 of the Bill of Rights, and one being a defaulter as shewn by the bill, they are acting without any legal authority. While this Court will not treat the acts of *de facto* officers as void, after they have exercised fully, certain official functions, if the said registrars hold their offices in violation of the Constitution, this Court has the power, and will arrest the exercise of their functions of office before they have finally closed their official duties, in order to prevent the commission of an irreparable wrong and injury to the citizens of the State, where they are parties to the proceeding. The language of the Constitution is mandatory, or clearly prohibitory against holding more than one office of profit created by the Constitution and Laws of the State, and where equity has attained jurisdiction, full and adequate relief will be given by arresting the exercise of unlawful powers to the injury of the complainants by mere *de facto* officers, who hold office in violation of positive and express constitutional prohibition, and where the proceeding is against the officers. *Blake vs. Sturtevant*, 12 *N. H.*, 572. *Cummings vs. Clarke, et al.*, 15 *Vermont*, 657. *Cornish vs. Young*, 1 *Ashmead*, 153.

It will be insisted, that the writ of injunction is the proper remedy : 1st. Because the granting of the writ will avoid a multiplicity of suits. *Amelung vs. Seekamp*, 9 *G. & J.*, 468. 2nd. Because, unless the said writ is granted the complainants and hundreds of other citizens will suffer an irreparable damage. *Trustees of Louisville, vs. Gwathmey*, 1 *A. R. Marshall*, 554. *Waterman's Eden on Injunction, p.* 1, *and note.* 3rd. Because no other remedy will give adequate relief, and prevent the commission of a grievous wrong to a large class of citizens. It is the special office of the process of injunction to command or restrain, according to the justice of the case, as well where Courts of Law would give redress after the commission of the wrong, as where Chancery pursuing and extending the application of the principles of law can alone administer practical justice.

*Briscoe vs. Ward,* 1 *H. & J.,* 165. *Campbell vs. Poultney,* 6 *G. & J.,* 94. *Glenn vs. Fowler,* 8 *G. & J.,* 340. *Lucas vs. McBlair,* 12 *G. & J.,* 1. *Duvall vs. Waters,* 1 *Bl.,* 561. *Keighler vs. Ward,* 8 *Md. Rep.,* 254. *Albert & Wife, vs. Winn & Ross,* 2 *Md. Ch. Dec.,* 24. *Same case,* 7 *Gill,* 446.

*A. Randall, Attorney General,* for the appellees, contended:

1st. That none of the reasons stated by the complainants, in their bill, authorized the Court below to grant the injunction therein prayed for, and that therefore the Court was correct in refusing to issue the same.

2nd. That the Court has no jurisdiction in this cause, for the reasons contained in the first eight points of the argument for the appellees in the case of *Baker, et al., vs. Anderson,* for a *mandamus,* recently argued in this Court *"mutatis mutandis,"* and the appellees will rely here upon the authorities therein referred to by the appellees in that cause; and also that the granting of an injunction is a matter resting in the sound discretion of the Court. 2 *Story's Eq.,* secs. 863, 959; see *notes* (*a*) and (*b*.) *Nusbaum vs. Stein,* 12 *Md. Rep.,* 318. *State vs. Jarrett,* 17 *Md. Rep.,* 330. *Bonaparte vs. Railroad,* 1 *Baldwin Rep.,* 217, 218. *Elmslie vs. Canal Co.,* 4 *Whart.,* 427.

That the Court will not interfere by injunction, unless the complainants have a clear, vested, legal or equitable right. *Snowden vs. Noah,* 1 *Hopkins,* (*N. Y.,*) 347. *New York vs. Mapes,* 6 *Johns. Ch. Rep.,* 46. *Ches. & Ohio Canal,* 3 *Md. Rep.,* 480.

That an injunction will not be issued to resist the Act of the Legislature, unless in a very clear case. *Troth vs. Troth,* 4 *Halstead's Ch. Rep.,* 244. *People vs. Draper,* 24 *Barb.,* 271. *Bennett vs. Boggs,* 1 *Bald. C. C. Rep.,* 74. *State vs. Railroad Co.,* 12 *G. & J.,* 400.

Where a special power is granted by the Constitution, no declaration of a general principle will control its exercise. The grant of unlimited powers to the State to prescribe the qualifications of voters, admits of the exercise of the power

to the extent of passing an *ex post facto* law. *Cush. on Leg. Practice*, 18 to 25. *Glenn vs. Fowler*, 8 *G. & J.*, 347. *Mayor, &c., of Balto., vs. Board of Police*, 15 *Md. Rep.*. 459.

The clause of the Constitution in reference to *ex post facto* laws, applies only to criminals. The following are causes of disqualification *not criminal*, viz: being a soldier in the U. S. Army, (in some States,) being a pauper, (in some States,) a minor, *non compos*, a female, &c. The law of 1865, if a punishment of crime, does not punish what was a crime before. An *ex post facto* law, imposing a less punishment than other existing laws, is not in violation of the Constitution. The punishment of *treason* was death—the disfranchisement of the *traitor* a lesser punishment.

In *State vs. Buchanan*, 5 *H. & J.*, 361, 362, conspiracy to defraud, &c., through the U. S. Bank,—a violation of a law of the U. S.,—was held punishable in Maryland. *Howell vs. State*, 3 *Gill*, 14. The conflict between U. S. and State laws must be *direct, clear, unequivocal*. These cases are authorities against the argument of the appellants, that because treason against the U. S. is punishable by the U. S. Courts, that the State cannot declare a traitor against the U. S. disqualified as a voter.

The time has not yet expired within which the parties, complainants, may be finally registered. This Court will assume that officers *de facto* will register them, if they can before final action, show themselves qualified. This proceeding is therefore premature.

As to the disqualification of the registrars, urged on the other side, *Article* 35 *of the Declaration of Rights* is only recommendatory. Article 3rd, section 10, shows that justices of the peace are not disqualified from holding other offices; for it makes them eligible as delegates. The two offices in this case, of justice of the peace and registrar, are not incompatible, but consistent and coalescing.

The office of registrar is only temporary, and this disqualification, arising from the strict construction of Article 35, is not applicable to them.

Hardesty, *et al.*, *vs.* Taft, *et al.*

There is no evidence in the record that any of the registrars, at the time of discharging their duties, were justices of the peace. In this state of the case, this Court will assume that the Governor has not violated his oath of office by appointing a disqualified person; and if such have been appointed, they may have resigned. It will be assumed that these registrars have not sworn falsely—that they were not in the receipt of the profits •of another office.

The objection, that one of the registrars was a "commissioner of public schools," is no proof that there was in existence at the time any such office under the Constitution and laws of Maryland.

The Court will assume that a public officer has not violated his oath, where the granting of the *injunction* rests only on the oath of the complainant; it will assume that the public officer is no more likely to have violated his oath than that the complainant has sworn falsely.

The Code, Art. 68, sec. 6, applies only to such offices as existed at the time of the adoption of the Code.

The law prescribing the oath of the registers, does not require it to be taken before the clerk of the Circuit Court, and entered on his test book; it provides that it shall be put in the *book of registration*.

Code, p. 442, sec. 104, Art. 63, title "Militia"—an instance where the oath of office is not taken and subscribed before the clerk, but before a justice of the peace, and entered on the commission of each officer   *Cush. on Leg. Prac.*, 73, secs. 201, 202, 203.   *Young vs. State*, 7 *G. & J.*, 260.   *Hollingsworth vs. McDonald*, 2 *H. & J.*, 230.   *Keller vs. State*, 11 *Md. Rep.*, 525.   *Gayle & Wife vs. Fattle*, 14 *Md. Rep.*, 184.

WEISEL, J., delivered the opinion of this Court:

The peculiar character of the bill in this case, may be learned from the prayer with which it concludes. In the language of the appellants' brief, "The bill prays for the writ of injunction against the officers of registration for

Prince George's county, enjoining and strictly prohibiting them from returning copies of their books or lists of qualified and registered voters to the clerk of the Circuit Court for said county, and the judges of election of the several election districts, and the writ of injunction against Frederick Sasscer, clerk of the Circuit Court for Prince George's county, enjoining and strictly prohibiting him from receiving a copy of the said books or lists of legal and qualified voters, and the writ of injunction against the judges of election for the said county, enjoining and strictly prohibiting them from receiving a copy of the said books or lists of qualified voters, and from regarding the said lists of legal and qualified voters, in determining who *are legal* and *qualified* voters, entitled to vote at the coming election, and that they may be directed and commanded to conduct the said election, on the 7th of November 1865, according to the Constitution and laws in force prior to the passage of the Act of 1865, ch. 174, and as if the said law had not been passed, or the said lists of legal and qualified voters made out by the said officers of registration.''

Without stopping at this point to inquire whether equity will lend its aid to accomplish the objects sought by this bill, we state that this Court has already passed upon the validity of the law of 1865, ch. 174, for the registration of voters, so far as it and the 4th section of the 1st Article of the Constitution were charged to be in conflict with the 10th section of the 1st Article of the Constitution of the United States, or with the Bill of Rights of Maryland. The views of the Court upon this branch of the inquiry, have been expressed in the opinion filed in the case of *Anderson vs. Baker, et al.*, determined at the present term, and they need not be here repeated.

The law is assailed however, in this proceeding, as void under the 28th section of the 3rd Article of the Constitution of Maryland, which makes it the duty of the General Assembly to enact public general laws, in articles and sections, in the same manner as the Code is arranged; and it

is alleged that this requirement is vital, and was disregarded by the Legislature in the passage of this law.

The first clause of this section provides for those properties of a general statute law of Maryland, which may be regarded as necessary to its validity. It gives the style of the law; the law must be passed by original bill; it must embrace but one subject, and that shall be described in the title; and no law or section of law shall be revived or amended by title or section only. These are regarded as requisites in the structure of such a law, necessary to its being; and yet only to a reasonable intent; for notwithstanding the mandatory nature of the language used, this Court has, in various instances, given to the like provision in the Constitution of 1851, (Art. 3, sec. 17,) a liberal construction, to effectuate, and not to destroy, the legislative will. A reference merely to these cases is deemed sufficient, viz: *Davis vs. The State*, 7 *Md. Rep.*, 159, 160. *Keller vs. The State*, 11 *Md. Rep.*, 531, 532. *Parkinson vs. The State*, 14 *Md. Rep.*, 193, 194.

The residue of the section relates to another and less important matter in the frame-work of the law, looking more to convenience in adapting it to codification, than to its operative effect; and the language assumes the directory form. The laws having been codified under former enactments, the Constitution contemplates the continuance of the system, and to save time, labor and expense, the duty is imposed upon the Legislature, in amending existing laws, or enacting public general laws, to observe certain forms, to adapt them to the Code arrangement. Regarding a compliance with this provision as not essential to the validity of a public general law, yet viewing this Act of Assembly in connection with chapter 159 of the same session, we think that the directions of the Constitution, in this respect, have been substantially and sufficiently complied with. That enacts that a new Article shall be added to the Code, entitled "registration," under which shall be arranged, by titles and sections, as in other Articles of the Code, this

registration law, and the other laws to be passed by the General Assembly, on the subjects of the registry of births, marriages and deaths, and such other subjects of registration as the Legislature may enact and direct. This appears to us to be a sufficient compliance with the directions of the Constitution. A new Article under the name of "registration" is enacted, and the titles or subjects in it are declared in their order—births, marriages, deaths, and voters; and the law under consideration was passed in sections. All that is essential for its easy arrangement in the Code is thus provided for. Until this codification shall have been ordered by the Legislature, the law, in its present form, will occupy its place in the published volume for the year, like other laws of the same session, and will be as readily found and understood, as if it had been passed, with the other laws referred to in chapter 159, in one law, with chapter, titles, and sections, &c., as above directed. We do not, therefore, consider the law as affected by the objection which has been urged against its validity on this ground.

The law, then, being operative, the other causes of complaint are matters pertaining to its execution.

It is said the officers of registration in Prince George's county, were not qualified as the law directs; and therefore their acts are void, and the *Court should remit the election to the judges of election.* The Constitution provides, that after the General Assembly shall have passed an Act of registration, and the same shall have *been carried into effect,* no person shall vote unless his name appears on the register, and the registration shall be evidence of the qualification of the voter. Art. 1, sec. 2. And the law itself declares, that the judges of election shall not receive or deposit the ballot of any person until they have found his name on the list or register of qualified voters, and have checked it thereon. (Sec. 18.) If it is a valid, general law, and if registrars have been appointed for every county of the State and city of Baltimore, and have entered upon and are discharging their duties, the law is carried into effect; and no Court

has the power, and such could not be the effect of any order or decree it might pass, to change the evidence of the voter's qualification in one section or county of the State, and clothe the judges of election therein with powers not conferred by the Legislature, but expressly taken away. Whatever may be the effect, in a county or election district, of a registration of voters by officers not qualified as the law directs, it is certainly not the province of this Court to order, by injunction, an election therein in a manner different from that designed by the law.

But we think there is no defect in the qualification of the officers of registration, by taking the required oath of office before a justice of the peace, instead of the clerk of the Circuit Court for the county. Laws to carry on the Government, are to receive a liberal construction, to effectuate the objects designed; and if the legislative purpose can be arrived at, in the absence of express language, that meaning is to be observed and obeyed. At all events, it would not be a safe or wise rule to substitute another intent, equally if not more doubtful, in order, not to support the Act of a public agent, but to annul it. One law of the State (1 Code, Art. 68, secs. 6 and 7) provides, that all officers (other than those mentioned in the preceding sections) elected or appointed to any office of trust or profit under the Constitution and laws of the State, including mayors, &c., shall take and *subscribe* the said oath (if in a county) before the clerk of the Circuit Court of the county, or before one of his sworn deputies; and the clerk shall procure and keep in his office a well bound book, to be called the test book, in which the oath shall be printed or written conspicuously, and the person taking or subscribing the same, shall annex to his signature the title of the office to which he shall have been appointed or elected, and the date of his signature. Now the question is, were the officers of registration to take the oath of office before the clerk? If so, they were to subscribe it in the clerk's test book. Yet the registration Act (sec. 1) requires them to take the oath and

subscribe the same in the book of registration for their respective wards or election districts, without expressly specifying before what officer. These officers were appointed for each ward and election district. Their duties were to be performed in such ward or district, and not beyond it. The registration books were to be furnished them in each ward of the city of Baltimore, and election district of each county, (sec. 4.) These books were to continue in their possession not later than the day of election, and then to be deposited with the clerk of the Circuit Court for safe keeping. Their appointments were temporary, and their duties specific— the same with or analogous to those of judges of election. Convenience therefore dictated that they should qualify in the district or ward where their duties were to be performed, and where the books of registration, in which the law directed them to subscribe the oath, were to be kept during the performance of said duties. The law does not provide that the oath should be duplicated, which would be the case if taken before the clerk of Courts. This view alone, without enlarging upon the subject, or supporting it by analogous cases, is sufficient to satisfy the Court that the registrars were properly qualified by taking and subscribing the oath in the registration books, before any one having authority to administer oaths.

If the registrars have, in the execution of the law, misconceived their duty in any respect, or violated their trust by propounding to applicants for registration, any questions which, a due examination into their qualification did not warrant, it is not for a Court of Equity to apply the remedy by injunction, and arrest their proceedings, because one or more may not have been fairly dealt with. Besides, if their names were recorded, and they took the oaths required, (as is alleged in the bill,) days were allotted by the law for the correction of errors and supplying omissions, and the complainants had the time and opportunity to resort to the registrars, and claim from them a final disposition of their cases. Without availing themselves of the mode

thus afforded them by law, or waiting for the appointed time, they filed a bill for the injunction prayed for in this case. A Court of Equity could not, under such circumstances, entertain the application.

It is averred that some of the officers of registration, whilst acting as such, held other offices of profit under the Constitution or Laws of the State, and that they were therefore precluded from exercising the functions of officers of registration, by the 35th Article of the Declaration of Rights, which declares, "that no person ought to hold at the same time, more than one office of profit, created by the Constitution or Laws of this State." The cases cited in support of this position, were suits at law against officers, irregularly or improperly appointed or qualified, or having no jurisdiction, for damages for acts done by them in the discharge of official duties, and they relied upon their office in justification of their proceedings; and the Courts held that this may be a good defence so far as third persons were concerned, but to justify proceedings in a case brought by the person injured against an officer, the defendant must show that he was an officer, *de jure*, and not simply *de facto*. But this is an application to a Court of Equity, to stop the proceedings of a class of officers in the county, charged with the registering of its voters, because a few of the officers, in certain districts, were not proper subjects of appointment. To yield to such an application would manifestly be stretching the sound discretion of the Court beyond all limits. And even if the application were to arrest the particular proceedings of the persons alleged to be illegally exercising the functions of the office, the averments of the bill, resting upon proofs exhibited with them, should be distinctly supported by such proofs. In this case the exhibits, while they show other appointments and qualifications thereunder, at other and anterior times, do not show or satisfy the Court, that at the time of exercising their functions as officers of Registration, they were also in office under their other appoint-

ments. A presumption might fairly be raised in support of the continuance of Government, that if the officers were in conflict, a resignation of the one alleged to be the constitutional barrier to the other, had previously taken place. Nor do we design to be understood in what has fallen from us on this point of objection, as expressing an opinion upon the nature or effect of the official acts of a person holding two offices of profit at the same time under the Constitution or Laws. The case, as presented to us in the bill before us, does not raise this inquiry.

We have thus disposed of all the causes or grounds relied upon in the bill, for the exercise of the preventive remedy by injunction, treating the application as one that might be addressed to the sound discretion of a Court of Equity.

On this branch of the inquiry, it seems to the Court very clear that a Court of Equity cannot be invoked to prevent the performance of political duties, like those committed to the officers of registration under the law. The willful, fraudulent or corrupt refusal of a vote by Judges of Election, or a like denial of registration by the officers appointed to register votes, (which is the same thing,) can be adequately compensated for in damages at law. *Bevard vs. Hoffman*, 18 *Md. Rep.*, 484. The writ of injunction will not be awarded in doubtful or new cases, not coming within well established principles of equity. *Bonaparte vs. Camden & Amboy Rail R. Co.*, 1 *Bald.*, 218. Each voter has a separate and distinct remedy for the wilfully improper deprivation of his vote; and the joinder of others like circumstanced or injured, as complainants in equity, on the ground of avoiding a multiplicity of suits, will not avail to afford equitable relief. To interfere in the mode asked for by the complainants, would be to stop a popular election in one portion of the State, and thus arrest, as to it, the wheels of Government. For irregularities in the conduct of an election, for receiving illegal or rejecting legal votes, and for the correction of consequences resulting

therefrom, the law provides appropriate remedies and modes of procedure. Such matters are not the subjects of equitable jurisdiction.

*Order refused and bill dismissed,*
*with costs to the defendants.*