# HARFORD AGRICULTURAL AND BREEDERS ASSOCIATION *vs.* NORMAN E. SOMER-VILLE.

*Race Track and Fair Associations: right to control grounds; delivery of feed upon premises. Injunction: remedy at law.*

Although it may be apparent that the complainant filing a bill for an injunction is no longer interested in the subject-matter of the controversy, yet if the decision of the questions raised on the record may be of importance to the defendant, the Court of Appeals will sometimes consider them in so far as may be necessary for the purpose of the case.          p. 578

While courts of equity exercise a very extensive jurisdiction in cases involving property rights, such jurisdiction does not in general exist where a plain, adequate and complete remedy can be found at law.                              p. 580

A corporation or party owning public fair or race grounds, stables, etc., has entire control of them, and has the right within reasonable limits to control its own grounds, and can lawfully refuse to allow any individual to frequent them for the purpose of soliciting orders for feed, etc., and can refuse the privilege of making sales on the grounds to others than those to whom it has sold such privileges.          p. 580

The proprietors of such grounds have the right in the interest of the public and for the protection of their own rights, upon reasonable complaints, or from their own knowledge, to exclude from the grounds persons guilty of dishonest conduct and corrupt methods in dealing with their patrons.     p. 582

But a party who has already made contracts for the sale and delivery of feed, etc., for horses on the grounds, before he was notified of any rule to the contrary, should be allowed to carry out such contracts.                            p. 582

Equity will not, in the exercise of its remedial power, enlarge its jurisdiction by taking the affairs of a corporation out of the management of its own officers and placing it in the hands of a receiver or others, except where fraud, mismanagement or collusion is shown.                           pp. 582, 583

*Decided April 10th, 1913.*

Appeal from the Circuit Court for Harford County (In Equity), (HARLAN, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*S. A. Williams* (with whom was *P. H. Close* on the brief), for the appellant.

*Thomas H. Robinson,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

The appellant is a body corporate, duly organized, under the laws of the State, to conduct agricultural fairs, and to maintain fair grounds or race tracks in Harford county. Under its charter, it had the right to rent, lease or sub-let amusement side-shows and other lawful privileges on its

tracks and grounds which it had established near Havre de Grace in the Second Election District of that county.

The appellee, is engaged in the feed business with his principal place of business, at Buffalo, in the State of New York and supplies feed for the owners of horses, at the different race courses in the United States and Canada.

On the 29th day of August, 1912, the plaintiff, the appellee here, filed this bill in the Circuit Court for Harford County for an injunction to restrain the appellant and its employees from interfering with him in delivering feed immediately on the grounds of the appellant, to the owners of horses now at the stables of this association, situate near Havre de Grace, Maryland.

The bill alleges, in substance, that the plaintiff has contracted with the owners of about three hundred race horses to furnish them feed and supplies necessary to take care of their horses, during the racing season on the grounds of the appellee.

The bill further avers, that he has sold and delivered to the owners of the horses over $1,000 worth of feed at the stables of the Association, and has orders for a large quantity to be delivered, and in order to properly conduct his business and supply his orders, he has now at Havre de Grace and on the cars of the Philadelphia, Baltimore and Washington Railroad over $2,000 worth of feed ready to be delivered, and that the owners of the horses who have contracted to purchase this feed are anxious to have the same delivered in accordance with their contracts.

The bill further states that the grounds are so situated that it is necessary for him to have teams to haul the feed from Havre de Grace and from the cars of the P., B. & W. Railroad to the grounds of the Association where the horses are housed and stabled, and that the defendant, through its agents, officers, servants and employees, has without any right or authority arbitrarily stopped the teams employed by him to deliver the feed, and refused and still refuses to permit them to enter upon its grounds, and has notified the

plaintiff that he shall not comply with his contracts and deliver the feed that he has so sold, although he has at all times and under all circumstances complied with every reasonable rule and regulation of the Association, and no charge or intimation is made by the Association or any of its officers or agents that he has violated any known rule or regulation made by it in reference to the delivery of the feed or in reference to any other matter connected with the Association.

And the bill also states that he has now four cars loaded with feed on the tracks of the railroad in Harford county, for which he is being charged demurrage, and that the owners of the horses with whom he has contracted to furnish the feed are in need of the same and are demanding that the same be delivered and that the plaintiff is without remedy at law and will suffer great and irreparable injury unless, by the intervention of this Court, the defendant Association and its employees are restrained from the unlawful interference with the plaintiff in the delivery of the feed immediately to the owners of the horses at the stables of the appellants.

The Circuit Court of Harford County upon the bill and affidavit, ordered an injunction to issue, as prayed by the bill with the usual leave to the defendant to move for its dissolution, at any time after filing an answer to the bill.

On the 31st of August, 1912, the appellant filed its answer and a motion to dissolve the injunction, and the case was set for hearing on the motion to dissolve upon oral testimony to be taken before the Court.

As the appellant's defense to the bill rests upon its answer, we will set out those parts material to the issue presented by the record.

The answer avers that it was duly licensed by the Harford County Racing Commission and had paid its license fee to conduct races at its grounds near Havre de Grace in the month of August, 1912, beginning on the 24th day of the month and continuing during a part of the month of Sep-

tember; that under its charter and the license, it was author-
ized to conduct running races and to establish rules for the
management of its grounds and to rent privileges thereon.

The answer further avers that amongst the privileges
rented on the grounds is that of selling feed and supplies of
all kinds required for running horses and the owners and
the keepers thereof and their attendants; that the plaintiff
was and is well aware of the rule of respondent in that re-
spect, and that the privilege had been rented by it, but in
spite of the rule and the knowledge, the plaintiff attempted
to exercise the privilege when he was warned by it to keep
off of its grounds and not to engage in the sale of feed or
supplies thereon.

The answer, also states, that upon the tracks of the defend-
ant are a great number of valuable horses and the keepers
thereof and their attendants, and it was and is its duty to
keep itself informed with reference to all persons having
access to its grounds and dealing with and furnishing sup-
plies to its patrons, and by reason of information received
by this respondent from reliable sources it became con-
vinced that plaintiff was guilty of unfair, unjust and dis-
honest practices in his dealings and conduct with the owners
of the horses, the keepers thereof and their attendants in
supplying feed and supplies; that by reason of its right to
rent privileges upon its grounds and because it had rented
the privilege of furnishing feed and supplies, this defendant
declined and refused to permit the plaintiff to exercise the
privilege upon its grounds, and therefore, plaintiff was noti-
fied to desist from so doing and to keep off the grounds.

The answer also avers that by reason of information re-
ceived as to the practices of which the plaintiff had been
guilty and was likely to be guilty, it excluded the plaintiff
from its grounds in the discharge of its duties to protect its
patrons while on its grounds against all unjust, unfair and
dishonest practices.

Apart from admitting that it was because its track and
grounds were opened as late as August 24th, 1912, and the

organization thereof was still incomplete that the plaintiff was permitted to deliver feed, at all, on its grounds, the defendant asserts, that it has no knowledge of the remaining allegations of the bill, but it positively denies that it has ever in any way interfered with the sale of the feed by the plaintiff outside of and away from its grounds.

The answer then avers, that the plaintiff will not suffer irreparable injury, if an injunction is not granted, and asserts that the plaintiff had knowledge of the appellants rule with reference to the privilege of selling feed and supplies, but failed to set out this knowledge in his bill.

The case was heard on bill, answer and testimony taken in open Court and from an order of Court passed on October 4th, 1912, overruling the motion to dissolve and continuing the injunction as stated in the order, this appeal has been taken.

We have set out the pleadings somewhat at length, because, the material facts are stated therein, and upon these our conclusion, upon the law, in the determination of the case, must rest.

In the opinion filed in the case, the judge below, said, "in order that no misapprehension may exist as to the scope of the restraining order it must be borne in mind that the object sought by the plaintiff was the protection of his right to carry out his contracts already made and the writ as issued and served must be construed with and limited by that fact."

The order of Court as issued on the 4th of October, 1912, after a hearing was to the effect that the injunction be continued in so far as to prevent defendant and its officers from interfering with the plaintiff in carrying out his contracts already made to deliver feed as set forth in the proceedings in the cause.

The prayer of the bill was for an injunction to restrain the defendant and its employees from preventing the plaintiff from delivering feed immediately on the grounds of the appellant to the owners of horses now at the defendants

stables, and the injunction as originally issued was in accordance with the prayer of the bill.

It will be seen, as disclosed by the record, that the races, at Havre de Grace, closed during the month of September, 1912, so that the injury or wrong complained of no longer existed and therefore the injunction which was continued on the 4th of October, 1912, can be of no further necessity as a means of protection to the alleged rights of the plaintiff, in this case. It is not alleged that he is continuing his business at Havre de Grace, and it is not apparent that he is any longer interested in the subject matter of the controversy, even if the races were not in active operation.

The decisions of the questions raised on the record may be of importance to the defendant, in the future management and conduct of its business at Havre de Grace, so we will proceed to consider them in so far as it may be necessary for the purposes of this case.

The plaintiff is a corporation and is authorized by its charter and the license obtained to adopt rules and prescribe regulations and conditions for the conduct and government of its business at the race track and upon its grounds.

It has the power to rent, lease, hire and sub-let such lawful privileges within its grounds as may be ordinarily done by an agricultural and racing association. Its meetings are subject to all the rules, regulations and conditions from time to time prescribed by the Harford County Racing Commission created by the Act of 1912, Chapter 132, and by the terms of its license it is revocable by the Commission for any violation thereof or whenever the continuance of the license shall be deemed by the Commission not conductive to the interest of its legitimate business.

It further appears that revenue from its privileges is necessary to maintain itself and one of its sources of revenue was the renting of the privilege to furnish feed and supplies of all kinds for the horses engaged in racing on the grounds.

On August the 22nd, 1912, it passed the following resolution, "whereas the Harford Feed Company has heretofore

entered into a contract with the manager of the association
to construct a suitable building and to furnish feed and sup-
plies of all kinds for the horses engaged in racing on the
grounds, and whereas, the Harford Feed Company has con-
structed a suitable building on the grounds of the associa-
tion and provided feed of all kinds required for the horses
engaged in racing, and is in a position to furnish supplies
upon immediate notice at market prices, and whereas, other
persons have up to the present time solicited and sold feed
upon the grounds of the association contrary to and in viola-
tion of the contract entered into by the parties, it is
unanimously voted by the directors of this association, that
from and after this date all persons are forbidden to go upon
the grounds of the association for the purpose of soliciting
orders for feed or for the delivery of the same on the grounds
of the association and the secretary is hereby directed to
notify the superintendent and the manager of this resolution
by enclosing them a copy thereof as passed by the Board of
Directors."

The plaintiff was told several days before the beginning
of the races to close up his matters on the defendant's
grounds, as the 24th of August would be the last day that
he would be admitted there for the purposes of his business,
and the gates would be closed against him. He was not only
informed of the resolution that had been passed by the asso-
ciation, but was told that the enclosure around the grounds
had now been completed and that he would be barred from
entrance for the purposes of his business.

There were two reasons given for the resolution in so far
as it applied to the plaintiff, one that the plaintiff was inter-
fering with the privilege that had been granted, and the
second was, that complaints had been made to the officers of
the company as to the unfair dealings of the plaintiff, and
that he had been guilty of corrupt and illegal practices in
feed deliveries with the patrons of the association.

There was no interference with the sale of feed by the
plaintiff outside of and away from its grounds, nor was there

any attempt to induce the owners of horses to purchase from others but to prohibit outsiders from soliciting feed orders on the grounds.

While Courts of Equity exercise a very extensive jurisdiction in cases involving alleged property rights, it is held as a general rule that it does not exist where a plain, adequate and complete remedy can be obtained at law.

In *Gee* v. *Pritchard*, 2 Swanston, 440, LORD ELDON said, the question will be whether the bill has stated facts of which the Court can take notice, as a case of civil property which it is bound to protect.

In *Hardesty* v. *Taft*, 23 Md. 512, it is said, the writ of injunction will not be awarded in new or doubtful cases, not coming within the well established principles of equity. *Banks* v. *Busey,* 34 Md. 437; *Whalen* v. *Dalashmuth,* 59 Md. 250; *Bernei* v. *Sappington,* 102 Md. 184; *Syfer* v. *Spence,* 103 Md. 68; *Kerr on Injunction,* 1 and 2.

In this case the appellant owned the grounds, the stables and was in complete control of the fair and races which were being held on the grounds of the association.

It was properly held, we think, by the Court below, in its opinion, "that the defendant has a right within reasonable limits to control its own grounds, and can lawfully refuse to allow any individual to frequent them for the purpose of soliciting orders for feed and can refuse sales, on the grounds, to others than those to whom it has sold privileges. Any other view would deny to defendant the right to the legitimate profit which it can make by the sale of privileges."

The injunction however was continued simply to prevent the defendant and its employees from interfering with the plaintiff in carrying out his contracts already made to deliver feed. The Court below states in its opinion, that the effect and scope of the restraining order extended alone to the plaintiffs right to carry out his contracts as already made, and the writ as issued and served must be construed with and limited to that fact.

It appears from the testimony that the plaintiff had made contracts in advance with the owners of horses at the racing stables to furnish them the necessary feed during the racing, and in accordance with these contracts had shipped large quantities of feed to Havre de Grace, and also bought locally, in that section of the county. He had been permitted from August 11th to August the 22nd, to deliver on the grounds large quantities of feed to the different horse owners, in carrying out these contracts.

The plaintiff testified that he was told by the superintendent of the grounds, that he was glad he was able to supply the horses then on the grounds.

Mr. Burke, the superintendent, testified that the association had nothing to do with the furnishing of feed, that owners of horses have to buy and pay for their own feed and they have a perfect right when they buy their feed from any one on the outside to have it delivered as they wanted and that the association could not prevent a man who owned horses from going outside, buying feed and having it delivered. He testified further, in answer to the following question: Q. You give out a feed privilege and allow somebody else bring feed in; why is that?' A. I have to protect them; I don't allow anybody to solicit on the grounds, but if a man orders feed on the outside, which I explained to Mr. Pusey, why I would not want to stop them at the gate; but I wouldn't allow anybody to solicit feed on the ground— solicit orders. That was the understanding with the privilege, that I would stop anybody soliciting but wouldn't stop anybody from delivering goods if a horse owner ordered on the outside. I could do it but I didn't want to do it; I have that privilege as manager.

While the appellee was not upon the grounds by any invitation or in execution of any contract with the appellant, yet he had been permitted to deliver feed upon the grounds up to the 22nd of August the date of the resolution, in execution of his contracts with the owners of the horses. The conduct of the appellant and its officers, towards the appellee

before the 22nd of August, was such as to lead him to believe, that he would be permitted to deliver the feed, on the grounds, and we think, under the facts of the case, the Court below, was right in holding that he should be allowed and permitted by the association to carry out the contracts already made to deliver feed upon its grounds to the owner of the horses, then at the races.

We need not discuss at length the second question raised by the pleadings, to the effect that the appellee was excluded from its grounds because of complaints to the association of unfair, unjust and dishonest practices committed on its grounds, by the appellee.

There were no complaints made by the owners of horses of any misconduct on the part of the appellee, in his dealings with them, either in furnishing feed or otherwise, and the alleged charges are positively denied by him, in his testimony.

The appellant had an undoubted right in the interest of the public, and for the protection of its own rights, upon reasonable complaints or from its own knowledge to exclude from its grounds persons guilty of dishonest conduct and corrupt methods, in dealing with their patrons.

In the case of *Grannan* v. *The Westchester Racing Association*, 153 N. Y. 449, the New York Court said: "It was the plain duty of the club to prevent dishonesty on the part of its jockeys, and *corrupt* and *illegal practices* on the part of those who attended races under its rules. An important, if not the principal method of enforcing obedience to its rules and the usages of the turf was the one of ruling the delinquent off the track. Some penalty was necessary to compel due and proper obedience, and it is quite clear that the one provided was the most efficient, if not the only one that would secure the result." *Horney* v. *Nixon,* 213 Pa. St. 20; *Collister* v. *Hayman,* 1 L. R. A. (N. S.) 1188.

In *Mason* v. *Equitable League,* 77 Md. 483, this Court said: A Court of Equity will not in the exercise of its remedial power except where fraud, mismanagement or collusion

is shown, enlarge its jurisdiction by taking the affairs of a corporation out of the management of its own officers and placing them in the hands of others or a receiver. And the same doctrine was also announced by this Court in *Goodman* v. *Lodge,* 67 Md. 117; *B. & O. R. R. Co.* v. *Cannon,* 72 Md. 493; *Barton* v. *Alliance,* 85 Md. 28.

The testimony, however, as to the special misconduct of the appellee is not of such a satisfactory and conclusive character as to justify this Court, in sustaining the appellant's contention, upon the facts contained in this record.

The substantial question raised on the record is: was the Court below correct in holding that an injunction should be granted to restrain the appellant from interfering with the appellee, in carrying out the contracts he had made prior to the resolution of the 22nd of August to deliver feed, as set forth in the proceedings, and as we concur in the conclusion of the Court below on this branch of the case, the order will be affirmed, and the cause remanded.

> *Order affirmed, cause remanded, with costs,*
> *to the appellee.*