PITCHER & MANDA *v.* LOWE, administratrix.

1. An agent, in behalf of his principal, having sold goods to another at a specified price, the sale being conditioned upon the principal having the goods in stock when the order reached him (the goods, in case the order was accepted, to be shipped when requested by the buyer), and the principal, upon receiving the order which was signed by the agent, having sent a letter to the buyer acknowledging its receipt and, without stating that the goods were not in stock, asking for references as to the buyer's financial standing, which the latter, in a letter recognizing the validity of the order, gave; and thereafter the principal, by his conduct, having allowed the buyer to believe that his financial references were satisfactory and that the order was duly accepted, and to act upon that belief, the buyer had the right to treat the contract of sale as complete, to insist upon its fulfillment, and to recover damages for a breach of the same, although in point of fact the goods in question were not in stock at the time the order was received as above stated.

2. Where a letter in evidence, construed with reference to its subject-matter, was entirely free from ambiguity, and the court correctly instructed the jury what meaning and effect should be given to the same, so doing is not cause for a new trial.

3. The defendants in an attachment case served by garnishment having appeared and filed a plea to the merits, they became liable, under section 3328 of the code, to the rendition of a general judgment against them, although in the beginning of their plea it was recited that they made "an appearance in said case solely and only for the purpose of defending the same to the extent of the amounts held up by garnishment."

4. Where, in an action for damages for the breach of a contract, there was nothing in the plea filed by the defendants with reference either to fraud or inadequacy of consideration, section 2742 of the code was not applicable in determining the amount of damages which should be awarded to the plaintiff.

5. This case was not within the statute of frauds; the verdict, under the evidence, was right; and no cause for a new trial appears.
February 27, 1895.

Attachment.    Before Judge BARTLETT.    Bibb superior court.    November term, 1893.

HILL, HARRIS & BIRCH, for plaintiffs in error.
L. D. MOORE, *contra.*

LUMPKIN, Justice.

B. H. Lowe, doing business under the name of The Lowe Seed Company, proceeded by attachment against Pitcher & Manda, who were non-residents of this State, for an alleged indebtedness upon a breach of contract to ship 100 barrels of seed Irish potatoes. The attachment was served by garnishments. While the case was pending here, Lowe died and his administratrix was made a party in his stead.

1. It appeared from the evidence, that on September 12th, 1892, one Russell, a traveling salesman of the defendants, sold to Lowe a bill of seeds of various kinds, including the potatoes, the sale, as to the latter, being conditioned upon the defendants having the same in stock when the order reached them; and it was further agreed that in case they accepted the order, the potatoes were to be shipped whenever requested by Lowe. After thus concluding the bargain with Lowe, Russell forwarded to Pitcher & Manda an order signed by himself for the goods he had sold to Lowe, as above stated. Upon receipt of this order, Pitcher & Manda, on September 15th, sent a communication to Lowe, of which the following is a copy:

"United States Nurseries,
Short Hills, N. J., Sept. 15, 1892.
"Messrs. Pitcher & Manda acknowledge, with thanks, the receipt of your esteemed order for potatoes through Mr. C. R. Russell."

On the 21st of September they also addressed to Lowe a letter, the material portions of which are as follows:

"We are in receipt of your esteemed order for seeds and potatoes through Mr. Russell; but as we have never had any previous business, we would thank you to send us addresses to whom you would refer us as to your standing. You will understand that this is always necessary before credit is extended; and trust you will see it in this light and favor us with the necessary information by return of mail."

To this letter, Lowe, on September 24th, made answer as follows:

"Replying to yours of the 21st inst., we refer you to any wholesale firm here, Exchange Bank and Merchants National Bank. The latter is where we do our business. We also refer you to D. Landreth & Son, Philadelphia; Johnson, Robbins & Co., Wetherfield, Conn."

Up to this time there was no intimation whatever from Pitcher & Manda to Lowe that the potatoes he had ordered through Russell were not in stock when the order reached them. The next direct reference to the potates was in a letter dated December 13th, in which Lowe requested Pitcher & Manda to ship certain flower seed which had been ordered on the 12th of September, and added: "Will order the potatoes out later." It does not appear that the defendants made any reply to this letter, denying their obligation to furnish the potatoes. On December 28th, the plaintiff sent a direct order for the shipment of one half of the potatoes, the first spell of weather that would admit; stating also that he was afraid to have them all shipped at that time, on account of the cold weather then prevailing. In reply to this order, the defendants, on December 31st, addressed a letter to Lowe, claiming that they did not have the potatoes in stock when the original order reached them, and also claiming that Lowe's order for the potatoes had been cancelled in a correspondence which had previously taken place between himself and their firm, with reference to certain onion seeds. In the next division of this opinion, the correspondence as to the onion seeds will be more particularly noticed, and it will then be made to appear that nothing said therein could, with any sort of fairness, be regarded as a cancellation by Lowe of his order for the potatoes. Leaving this matter out of consideration, therefore, we think, upon the facts stated, that Pitcher & Manda were under a bind-

ing contract to deliver the potatoes to Lowe, and that they are liable to him for any damages which resulted from a breach of that contract. Lowe certainly would have been bound to pay for them at the contract price, had they been shipped. It is true that the original order for the potatoes was not' signed by Lowe, but by the agent of the defendants. Nevertheless it is evident from the correspondence above recited, that Lowe subsequently, in writing, more than once recognized the validity of the order signed by Russell; and therefore, although the potatoes were of greater value than fifty dollars, he was under a legal and binding obligation to take them. Letters written by one of the parties to the other, acknowledging the making of a parol contract previously entered into between them, are sufficient to take the case out of the statute of frauds. *Foster et al.* v. *Leeper & Menafee,* 29 *Ga.* 294, cited approvingly in *Georgia Refining Co.* v. *Augusta Oil Co.,* 74 *Ga.* 508. Therefore, so far as Lowe is concerned, the statute of frauds would have been of no avail to him, had he undertaken on his part to repudiate the contract.

When Pitcher & Manda received the original order from Russell, it was their duty, if they did not have the potatoes in stock, to immediately notify Lowe of the fact, so that he could make other arrangements to procure them. They not only failed to do this, but, by asking him for references as to his financial standing, to say the' least, left him strong reason to infer that if the references were satisfactory, his order would be filled. He promptly furnished the references, and it does not appear that Pitcher & Manda ever objected to the same as being in the least degree unsatisfactory. By their silence in this respect, they encouraged Lowe to believe that his order for the potatoes had been accepted, and would be filled whenever he so requested. It also appears that they shipped to him other goods included in

the same order as that which referred to the potatoes; and even as late as December 13th, when, in giving direction as to the shipment of a portion of these goods, he also incidentally mentioned that he would order out the potatoes later, they made no protest, nor in any way indicated an unwillingness to furnish the same. Taking the conduct of the defendants throughout the entire transaction, we think it equivalent to an express undertaking on their part to deliver these potatoes. At any rate they certainly misled Lowe and allowed him to act upon the belief that they would do so; and in view of this fact, and all the other circumstances, they surely are estopped from asserting they never positively so agreed, and consequently were under no obligation so to do. This is true although, in point of fact, they may not have had the potatoes in stock when the order from Russell was received. That order gave them the right to decline to furnish the potatoes in the event they did not have them in stock; but having then failed to exercise this privilege by notifying Lowe of their non-acceptance of this portion of his order, but on the contrary, misleading him by their conduct into the belief that they had accepted his order in full, it is now too late for them to claim any benefit under the stipulation indicated, for in law they must be held to have waived it. The fact that potatoes had advanced rapidly in price may explain the conduct of the defendants in the premises. We are quite certain that if the price had declined, they could, and doubtless would, have held Lowe bound to the contract.

2. We will now notice the correspondence between the parties with reference to the onion seeds. On October 5th, the defendants wrote to the plaintiff as follows:

"Before shipping the Bermuda onion seed upon your order, we write to you to say that Bermuda onion seed is saved in different parts of the world, namely, Cali-

fornia, Italy, and the Island Teneriffe. That saved in the two former places can be sold at the price you offer us in your order, namely, $1.00 per lb.; but it seldom gives satisfaction, as the change of climate alters the character of the goods, and generally causes disappointment. True Bermuda onion seed can only be procured from the Island of Teneriffe, and that which is sown in Bermuda to produce the true Bermuda onion, comes from this section. This seed cannot be sold anywhere for less than $3.00 per lb., and before filling your order we would acquaint you of this fact. We have a limited quantity of seed on hand, and await your orders before shipping, but would strongly recommend your not serving your customers with the cheaper grade. We are anxious to give satisfaction in your part of the country, and would rather not sell goods at all than to disappoint either you or your customers."

In response to this letter the plaintiff, under date of October 8th, wrote the following:

"Replying to your favor of the 5th inst., we would say that we only gave the order to your salesman after he had shown us by a letter from you that the onion seed were direct from Bermuda Isles. We want no other; and if you cannot live up to the order as accepted some time ago, we do not want anything as a substitute, and you can cancel our order.

"P. S. Send me by mail ½# of each, so that I may have them tested."

As already stated, it was contended by the defendants that the letter of the plaintiff last above copied amounted to a cancellation of his entire order of September 12th. We do not think it could possibly admit of such a construction. It seems perfectly clear that this communication related to the onion seeds alone, and had no bearing whatever upon the order for the potatoes. The court, in substance, instructed the jury to this effect, and we hold that so doing was not cause for a new trial.

3. It was further contended by defendants, that in no event could the recovery for the plaintiff exceed the

sum of the amounts held up by garnishment, because the defendants by their plea had endeavored to limit their defense by reciting therein that they appeared only for the purpose of defending the action to the extent of the amounts so held up. We know of no law or rule of practice which will allow anything of this kind to be done. Section 3328 of the code explicitly provides, that when the defendant in attachment has appeared and made defense, a general judgment may be rendered against him. In the present case the defendants pleaded the general issue; the statute of frauds; that the sale was a conditional one, as already indicated; and also, a set-off. This was certainly appearing and making a defense, and the defendants cannot be permitted to say that all these defenses were made simply to defeat the recovery by the plaintiff as to the sums in the hands of the garnishees. It would indeed be a strange doctrine to allow a defendant in any case to dictate to the court the terms upon which he was willing to make an appearance, or to limit arbitrarily the legal consequences of an appearance on his part.

4. The court correctly charged the jury, that if the plaintiff was entitled to recover, the measure of damages would be the difference between the contract price and the market value of the potatoes at the time and place when they should have been delivered under the contract. At the request of defendant's counsel, the court also gave in charge the substance of section 2742 of the code, but added that the true rule of damages was the one above stated. Complaint was made that the request to charge was thus qualified. Whatever may be the precise meaning of the section just mentioned, it certainly has no application at all to a case like the present. There was nothing in the pleas of the defendants with reference either to fraud or inadequacy of consideration, and therefore it would not have been

erroneous to have refused the request altogether. What the court did charge practically amounted to so doing. On the whole, we think the jury were properly instructed upon the measure of damages, which was all that the defendants had any right to demand.

5. It appearing from the statement of facts in the beginning of this opinion that this case is not within the statute of frauds, this subject reqüires no further notice. After a careful examination of the evidence, we are satisfied that the verdict was right; and upon a thorough review of the whole case, we see no cause for granting a new trial.        *Judgment affirmed.*