694

27150. FRIGIDICE COMPANY *v.* SOUTHEASTERN FAIR ASSOCIATION INCORPORATED *et al.*

Decided November 10, 1938.

*Isaac M. Wengrow, George B. Tidwell,* for plaintiff.

*Hendrix & Buchanan, W. K. Meadow, Spalding, Sibley, Troutman & Brock,* for defendants.

SUTTON, J. The petitioner, while alleging generally that it had a permit from the Southeastern Fair Association to deliver ice to the Teeny Weeny stores within the fair grounds, and that it has been damaged by the breach of that permit and the alleged conspiracy or effort on the part of the defendants to disrupt and ruin its business, fails by its specific allegations to show that its rights have been in any way encroached upon. The exhibit attached to the petition, which the plaintiff refers to as a permit, is entirely lacking in the respect claimed, and is the only evidence relied on to sustain such general contention. It is alleged that the plaintiff

made formal application to the association to arrange for deliveries of its ice to the Teeny Weeny concessions, but the exhibit shows that the association merely made a written offer to contract with the plaintiff, for a consideration of $25 to be paid to it, whereby the plaintiff would be allowed the "privilege of delivering ice to Teeny Weeny's four locations only." The plaintiff was informed in that communication that "if this is satisfactory, will be glad to *prepare a contract* and forward to you." (Italics ours.) The petition shows that the offer was not accepted; and while it alleges that the plaintiff made a continuous offer of the $25, the minds of the parties never met and no contract was entered into, the petition alleging that the plaintiff contended then, and continued to contend, that it could not be confined in the sale of its ice to only its customers with whom it had contracts, but should be permitted to serve any customers demanding and requiring the use of its ice. By nothing that transpired between the plaintiff and the association was any right obtained by the plaintiff in the respect contended for, and consequently all of the allegations predicated on any right of the plaintiff, under any imagined permit or contract, as to a conspiracy to interfere with its rights or an effort to stifle trade or competition, are unavailing.

But the plaintiff, aside from any permit or contract, claims that it has been damaged in the following respects: that the association is of a quasi-public nature and has no right to make an exclusive contract with the defendant ice company, but is obliged in law to allow all dealers in ice to make sales within the fair grounds, and that in an effort to injure and damage and ruin its business the two defendants conspired to prevent the plaintiff from selling to any one who might require its product, informing the Teeny Weeny stores that they could buy ice only from the defendant ice company, and that the plaintiff's trucks would not be permitted to enter the fair grounds; that in pursuance of such conspiracy the association, through its agents, did in fact, on October 7, 1937, bar one of its trucks from entering the grounds, and that in consequence thereof it sustained a loss of $23.50 because of the fact that the ice melted in the hot sun, that it was unable to fulfill its contract with the Teeny Weeny stores, who were forced to buy from the defendant ice company, and that the acts of the defendants amounted in law to a boycott and restraint of trade. Manifestly a conspiracy

is not, in a civil action, the gist of the cause of action. As was said in *Woodruff* v. *Hughes*, 2 *Ga. App.* 361, 364 (58 S. E. 551): "Conceding, then, that an averment that the acts alleged were done in pursuance of a conspiracy does not change the nature of the action or add anything to its legal effect, the allegation and proof of conspiracy is important to the action only because it will enable the plaintiff to recover his damages against such of the defendants as may be shown to be guilty of the tort, even should he fail to prove a conspiracy or concerted design; and it may be pleaded and proved as aggravating the wrong of which the plaintiff complains and to enable him to recover against all the defendants as joint tort-feasors. If the conspiracy can be proved, the party wronged may look beyond the actual participants committing the injury and join with them as defendants those who conspired to accomplish it." While the allegation of conspiracy may well serve the purpose dealt with in the above-quoted language, it does not of itself constitute a cause of action.

The acts alleged plainly do not constitute a tort. Just as the association had the right to permit the plaintiff, upon complying with reasonable requirements as to the method and manner of delivering the ice, to enter its trucks in the fair grounds for such purpose, it had the right, when the plaintiff did not enter into the proposed contract, to permit the defendant ice company to make deliveries of ice; and further, while the specific question has not come up for decision in this State, we see no reason why the association, alleged to be a quasi-public corporation, could not, in the exercise of police powers in properly regulating and controlling the public fair grounds on a reservation of the city, grant to one person, firm, or corporation the exclusive privilege of delivering a single commodity. If all be permitted to ply their trucks up and down the thoroughfares of the grounds, which are usually in fair time thronged with visitors, it can readily be perceived that much confusion and inconvenience, if not hardship or injury, might result to the public. Having granted the exclusive right to make deliveries of ice, it was the duty of the association to protect the defendant ice company against infringement of that right. "Where a society has, for a consideration, granted an exclusive privilege or concession, it is bound to protect the purchaser against its infringement by others, or by the society itself, and is liable for any loss

resulting from its failure so to do'; and this is true even though the concessioner under protest submitted to the act that infringed his concession." 2 C. J. 994, § 13. In Robinson v. Clark, 53 Ill. App. 368, it appeared that Clark was ejected from the grounds of the fair association for distributing score cards of the races without first having purchased the privilege to do so. He sued the superintendent of the fair grounds for false arrest and assault. It was held: "A person applied to an agricultural society for the purchase of a privilege, and agreed upon the price to be paid for it, but there was no agreement that the purchase should be upon a credit. Not hearing further from him as to whether he was prepared to take the privilege, the society, on the evening before the opening day of the fair, sold it to another. It was held that the mere fact that it had been agreed that the privilege should be sold for a certain price, which had not been paid, did not authorize the person applying for the purchase to exercise the privilege, to the detriment of one who had paid for it. Nor did it debar the society from protecting the purchaser who had paid his money from infringement." In that case there was an issue as to whether or not the superintendent Robinson used more force than was necessary in ejecting Clark, and the case was remanded for a new trial on this issue alone; but the right of the society to eject the one without a privilege was clearly shown by the opinion. In Bower v. Robinson, 53 Ill. 370, a companion case, it was held: "Where an agricultural society holds a privilege, and disposes of the same to a person, the officers of the society have the right to eject from the grounds, after ordering them to desist, all persons infringing upon such privilege."

In State v. Reynolds; 77 Conn. 131 (58 Atl. 755), where the Supreme Court of Connecticut held that a statute prohibiting any one from engaging in the temporary business of selling articles of provisions within a mile of a fair of any incorporated society, without consent of the society, is not unconstitutional but is valid as being within the police power, the court said: "It has long been the policy of the State to protect and aid financially public societies of the kind contemplated by the statute here in question, for the encouragement or improvement of agriculture. To this end the State encourages them to hold such exhibitions and fairs as the statute in question contemplates, and delegates to them certain

powers for the purpose of enabling them more effectually to carry out the objects for which they exist. Societies of this kind are justly considered to be of public benefit. The act in question was ostensibly enacted for the protection of the fairs and exhibitions of such societies. . . We see no reason for supposing that it was enacted for any other purpose. It is not enacted for the benefit of any particular society, but general in its operation. It deprives the individual of no vested rights, and does not interfere with him in the pursuit of his usual and ordinary lawful business. It restrains him, not for the benefit of the society holding the fair, but for the public good, and it restrains him no further than appears to be reasonably necessary for the public good. Nothing is more common than restrictions of this kind." In Mason v. Dewis, 24 Ky. L. R. 1312 (71 S. W. 434), Mason had been granted the exclusive privilege of selling refreshments on the grounds of a county fair association. The court said that he thereby acquired a valuable right, and that if he lost that right by the act of another he was entitled to redress, and that an action would lie against one who forcibly and against the will and consent of him and the fair association sold refreshments over the enclosure of the fair grounds. For other cases as to the right of fair associations to grant concessions and their police power in controlling the exercise of such privileges, see Mackay v. Minnesota State Agricultural Society, 88 Minn. 154 (92 N. W. 539), and Virginia State Fair Association v. Virginia Amusement Concession Corporation, 116 Va. 547 (82 S. E. 176). In none of the cases above discussed was the precise question raised as to the right of a fair association to grant an exclusive privilege, and, so far as we are aware, it has not heretofore been denied. For the orderly conduct of a fair of the nature set forth in the present petition, and for proper protection to the public, we hold that the association had the right to grant to a person, firm or corporation the exclusive privilege of delivering its ice to such concessioners within the fair grounds as in its discretion the association might determine, and that in the absence of a permit the plaintiff in the present case can not complain that its trucks were barred from the premises.

Nor can the plaintiff, not having obtained any right to deliver its ice within the fair grounds, complain that the defendants have sought to obtain a monopoly of the ice business. The remedy in

such a case would seem to be a suit brought by the attorney-general in behalf of the State. Cf. *Atlanta Terminal Co.* v. *American Baggage &c. Co.*, 125 *Ga.* 677 (54 S. E. 711); *Palmer* v. *Atlantic Ice & Coal Cor.*, 178 *Ga.* 405, 415 (173 S. E. 424). But it is contended that the association had permitted the plaintiff to deliver ice to the Teeny Weeny stores during the year 1937, that for the stores to properly receive the ice the plaintiff had gone to the expense of $400 in constructing and delivering certain boxes to the stores, that by reason of the conduct of the association in that respect it is estopped to prevent the plaintiff from continuing to deliver its ice to the stores, and has in consequence damaged the plaintiff. A proper construction of the allegations is that the boxes were constructed and delivered to the stores, not for the purpose of using them merely during a ten-day fair, but generally in the use of plaintiff's product throughout the year at the fair grounds. Consequently it could not be said that the $400 expended in the construction of the boxes amounted to a loss sustained by the plaintiff because of being denied access to the grounds during the period of the fair; and as the association had the right to specially regulate the conditions in and about the grounds during the fair, no estoppel resulted from anything done by the association theretofore under circumstances different from those obtaining during the fair. The only case cited by plaintiff in support of its contention based on estoppel is Harford Agricultural &c. Asso. *v.* Somerville, 120 Md. 572 (87 Atl. 937); but the facts of that case distinguish it from the present. The plaintiff in the trial court had contracted with the owners of about 300 race horses to supply them feed and supplies necessary to take care of their horses *during the racing season.* Certain deliveries were made. The fair officials expressed their satisfaction, and thanked the dealer for supplying the feed; whereupon the dealer ordered a large quantity of feed for the express purpose of delivering it to the owners of the horses. The fair association then sought to prevent the dealer from coming into the grounds, and the Maryland appellate court held that the association officials by their conduct had estopped themselves from doing this. The headnote reads: "Though defendant agricultural association had, as it had a right, sold to another the privilege of selling feed on its grounds, and had, just previous to the opening of races held by it, passed a resolution pro-

hibiting any one else delivering feed on the grounds, yet, plaintiff having previously contracted with the owners of attending horses to deliver them feed on the grounds, and brought it to town for that purpose, and the conduct of defendant and its officers toward plaintiff during the preceding days, when he had been permitted to deliver feed for the horses, and had been told by the superintendent that he was glad plaintiff was able to supply the horses then on the grounds, having been such as to lead him to believe that he would be permitted to deliver the feed on the grounds, he should be allowed by it to carry out his contract so previously made and it should be enjoined from preventing it." In the present case the contract with Teeny Weeny stores was made on April 15, 1937, and plaintiff was permitted to deliver ice to the stores on the grounds during a period when no fair was in progress. The petition shows that plaintiff recognized that a permit would be necessary in order to make deliveries during the fair in October, 1937, that it made application for a permit, and that nothing was done by the association in the way of granting any right to plaintiff to enter its trucks during the fair or in leading it to believe that it would be permitted to do so except upon signing a contract on the terms proposed. The petition did not set forth a cause of action for any reason urged by the plaintiff, and the court properly sustained the general demurrer.

*Judgment affirmed. Guerry and Felton, JJ., concur.*