1. When it is necessary to show that a contract by correspondence was effected by the acceptance of an offer, such is not shown by the evidence that a telegram was sent and received, even though the telegram in effect stated that the offer was accepted, unless it be shown that the acceptance was by the party to whom the offer was made.
2. Moreover, the offer must be accepted unequivocally, unconditionally, and without variance of any sort, and it must be assented to in the same sense.
3. Under each and both of the foregoing principles, the court properly awarded a nonsuit in this case.
 No. 14646. OCTOBER 8, 1943.
Milner Hotels Incorporated sued William H. Black for specific performance of an alleged lease contract, and for damages resulting and to result from a breach thereof by the defendant. The petition was in two counts. A report of the allegations appears in Black v. Milner Hotels Inc., 194 Ga. 828
(22 S.E.2d 780). When the case came to trial, after considering all of the plaintiff's evidence, the court granted a nonsuit. In addition to what appears *Page 687 
in the report in 194 Ga., and what is said in the opinion infra, the following is stated: The subject-matter of the alleged lease is hotel property in the City of Atlanta. The parties had agreed on the amount of the rental. Black dealt with Earl R. Milner. Milner testified that he had told Black that the lease was to be to the Georgia corporation, styled Milner Hotels Inc. Black submitted a form of lease which was not acceptable to Milner, who had a new one drawn and sent to Black. This one was not acceptable to Black, who made several alterations in it, including the clause: "as per letter of William H. Black to Earl Milner, July 3, 1941." Black signed it and returned it to Milner, with the statement: "If you will acknowledge the copy I am sending you and return it to me, I will do the same upon the copy that went to Beaver Lake, when I get it." On July 14 Black telegraphed to Milner: "Am making lease dating July 12, and calling for first payment of rent July 20, 1941." The plaintiff introduced a letter signed "Milner Hotels, Earl R. Milner by H. J. D.," addressed to Black, as follows: "We have received the executed copy of the proposed lease on the Tallulah Hotel in Atlanta, containing the added statement which reads as follows: `As per letter of William H. Black to Earl R. Milner, July 3, 1941.' This added statement covers too much ground, and in our opinion contains too many statements that we do not believe should be embodied in the lease. This statement, if added, would make the lease ambiguous and not fair to you or the lessee. I am herewith enclosing a copy of the questionnaire referred to in the lease and dated May 14, 1941. We wish that you examine this questionnaire; and if that is satisfactory, wire us at once to proceed, and giving us the right to strike out the statement mentioned above, which was inserted in the lease after the signature of Earl R. Milner was placed on the lease. We will need every hour of time available; so would appreciate your immediate reply."
Whereupon Black wrote to Milner, in part, as follows: "Away back in the early part of June I made out a lease and sent it to you, asking that if there was anything objectionable in it, you point it out. Your lawyer certainly can not be accused of hurrying, because now in the second half of July he sends me a proposed lease that refers to a statement that he is attempting to hold me to as a condition precedent to the lease. This statement has nothing on *Page 688 
earth to do with our negotiations, and it was only made at the insistence of your representative that I took the precaution of telling him in the presence of witnesses that I was not familiar with, and that I got over the telephone for him from other people. Nothing came of it, and I never had anything from you until about two weeks ago. In my lease, form of which your attorney made no objection to, I used the following language: "The lessee agrees that the leased premises are in condition satisfactory for the purposes herein contemplated, and the same are accepted without warrant or representation as to condition on the part of the lessor.' This clause was necessary, because I so seldom go to Atlanta, and have so little time to go to the hotel, that I knew, and know, very little about it. After keeping my proposed lease all this time, your attorney now blandly inserts the clause: `It is understood and agreed that the lease is signed on the information given in the questionnaire dated May 14, 1941, and signed by William Harmon Black.'. . . The last lease you send is not even signed by the Milner Hotels Inc., by an officer. It is simply signed `Milner Hotels, Inc.' on one line, and on the next `Earl R. Milner.' I mean the one I still have. I was anxious to have you as a tenant with your chain, and I waived a number of points that I shall never waive again, the most important of which was security for the rent, and the reduction from five hundred dollars to four hundred and twenty-five. But while I was anxious to have you as a tenant, because I was impressed by you, I shall certainly not authorize you to strike out what I had in, and what I had taken pains to incorporate in the lease I submitted. I am sorry I wasted so much of your time, and that so much of my own was wasted while, as you know, I was sick; but that is water over the mill now. I am not at all worried about getting a tenant, because, in addition to the two others I told you of, there is another to-day, but all these people I held off until I could find out during all this time whether we could get together."
Also a telegram signed H. D. Pratt, directed to William H. Black, dated July 18, 1941, as follows: "Taking possession July 20th as per lease." Also a check signed Milner Hotels Inc., Delaware, payable to William Harmon Black, for $425, dated July 18, 1941, and drawn on a Detroit bank. Written on the check was this memorandum: "Tallulah Hotel, Atlanta, Georgia, rent 7/20/41 to 8/21/41." This check was returned on July 22, 1941. On July *Page 689 
18, 1941, Black wrote to Milner a long letter, part of which is as follows: "You send me a telegram which means nothing; you simply say `as per lease.' There is no lease. Your representative in Atlanta made me an offer for the Milner Hotels Inc., and furnished me a lot of bank references for the Milner Hotels Inc. After about two months shilly-shallying and after I had sent you a lease made to Milner Hotels Inc., I called on you at the Milner Hotels Inc., office in Detroit, and I believe every letter I wrote I addressed to you personally, but of course as the representative of the Milner Hotels Inc.; and in fact the original statement that you wanted incorporated in my lease is on the Milner Hotels Inc. form; your letters are all signed Earl R. Milner, signed personally or by the initials of one of your employees; the form of lease you furnished me in Chicago is on Milner Hotels forms; and the form I sent you names the Milner Hotels Inc. as lessee. Even the offer of December 26, 1940, was in behalf of the Milner Hotels Inc. After I got back from Detroit Mr. `Kenneth J. Hale, secretary,' signed a letter for the Milner Hotels (Detroit), and on June 18th I have a telegram from you, signed Milner Hotels. On June 24, 1941, you signed a letter on the head of the Milner Hotels. I again wrote you personally on June 25th, and on July 1st you personally wrote me. I again wrote you personally on the 3rd of July, and you again wrote me personally by `H. J. D.,' and you enclosed leases signed Milner Hotels Inc., under which you wrote the words `Earl R. Milner.' In a letter you then sent me a copy of a statement, which you have never stated that I signed, still on the printed form of the Milner Hotels Inc., Detroit, Michigan. On July 15th you again write me `Earl R. Milner by H. J. D.' Notwithstanding all these things you send a lease not signed by anybody except Earl R. Milner, and in the first paragraph of that lease you put in the words `a Georgia corporation.' At that time I assume you knew that there was no Georgia corporation, and hence you could attach no seal, and no one could sign as an officer. The very able attorneys or assistants you have evidently assume that no one reads your letters or leases. I have donated all the time and had all the worry I care to have with you and your Detroit corporation, and your near-Georgia corporation, which I never heard of until you sent me the lease not signed by Hotels Incorporated, through any sort of officer. How can any one take all these childish *Page 690 
things seriously. The last telegram is from Mr. H. D. Pratt. I may have met him, but I can only recall the name of Mr. Hale and Mr. Daldin. I shall not be in Georgia Monday, because I have wasted so much time fooling around with you, and trying to find out what you were trying to do, that I shall not be able to get away. Life is too short and I have too many serious things to do to give any attention to the kind of letters and leases and telegrams I am getting from so many different sort of people, some of whom I don't even recall having met. I think you are rather optimistic to expect that I would sign up with a (so far as I know) non-existent corporation without either assets or officers. I have spent the last two years showing that as far as I am concerned that can't be done."
Telegram from Black to Milner, dated July 18, 1941, reading: "Will not turn over hotel, because no lease. Writing you air mail to-night."
This case was before us on an assignment of error complaining of the refusal of the judge to sustain a general demurrer to the petition as amended. It was held that each count stated a cause of action; one for specific performance, the other for damages. Black v. Milner HotelsInc., 194 Ga. 828 (supra). At the trial the judge granted a nonsuit, which ruling is the basis of the only exception in the present record. There is for determination, therefore, one question only: Did the plaintiff prove its case as laid? SeeClark v. Bandy, 196 Ga. 546 (27 S.E.2d 17). A sufficiently full statement of the allegations may be found in the report of the case on its first appearance here. On the trial Black was called as a witness by the opposite party, and testified. Milner, the president of the hotel company, testified by deposition; and much documentary evidence, consisting in part of forms of leases, various telegrams and correspondence, was introduced. The record shows that there were many suggestions as to what should be expressed in the lease, and counter-suggestions. The negotiations extended over a considerable period. The controlling issue is, did the parties reach an agreement? Was a contract entered into between them?
If the redrafting by Black of the form of the lease which Milner *Page 691 
sent to him, this redraft being returned to Milner, constituted an offer, the entire record shows that the parties intended that Milner Hotels Incorporated should be the lessee, and therefore that the offer was made to Milner Hotels Incorporated. The only acceptance of the offer was a telegram signed "H. D. Pratt." The name Milner Hotels Incorporated does not appear. In the many letters and telegrams appearing in this record, Pratt's name appears only once before, and that on a telegram which is signed, "Milner Hotels, H. D. Pratt." It is nowhere shown in the record who Pratt was, what connection, if any, he had with Milner Hotels Inc. True, on the day Pratt's telegram was received, Black wrote to Earl R. Milner a letter in which was written, "You send me a telegram which means nothing, you simply say `as per lease'," but this is insufficient to show an acceptance by Milner Hotels Inc., a corporation, of an offer which Black made to it. He not only refused to comply, but said so in plain terms. If it be conceded that the telegram, "Taking possession July 20 as per lease," which was signed only "H. D. Pratt," was sent to Black at a time while his offer was still pending, nevertheless no contract is shown, because no acceptance was had by the opposite party. The consent of the parties being essential to a contract, until each has assented to all the terms the contract is incomplete. Until assented to, each party may withdraw his proposition. Code, § 20-108. If there is a proposition but it is not accepted, no binding contract results. Central of Georgia Railway Co. v.Gortatowsky, 123 Ga. 366 (51 S.E. 469). The acceptance must be unequivocal and unqualified. Gray v. Lynn, 139 Ga. 294
(77 S.E. 156). The offer can be accepted only by the person or persons to whom it is made. I Williston on Contracts, § 80. A telegram not signed by and not even shown to be sent by the one to whom the offer was made, which read, "Taking possession July 20th as per lease" (the record showing that the parties had not been able to agree upon the terms of the lease, but each had submitted to the other a different form for it), was not an unequivocal and unqualified acceptance. It was only by reference that it purported to be an acceptance at all. Which of the several forms of the lease did the message refer to? Who was bound by the so-called acceptance? No agreement of the parties was shown, and hence no contract. It was not erroneous to grant the nonsuit.
Judgment affirmed. All the Justices concur. *Page 692