48950. AYERS ENTERPRISES, LTD. v. ADAMS.

ARGUED JANUARY 17, 1974 — DECIDED JANUARY 31, 1974 —
REHEARING DENIED FEBRUARY 19, 1974 —

*Katz, Paller & Land, Fred L. Cavalli,* for appellant.
*Robert B. Harris, Nancy Pat Phillips,* for appellee.

DEEN, Judge.

1. We are first of all faced with a motion for affirmance by the appellee based on the following: Appellant's notice of appeal directs that there be omitted from the record on appeal only "all photographs admitted into evidence" but it appears that the court reporter preparing the transcript was in fact instructed to and did omit from the record all documentary evidence of the appellee while including all that of the appellant. Among the omitted materials is the written contract between the parties on which the plaintiff's case is based, and which the appellant contends is in fact nudum pactum.

The appellee could, of course, under Code Ann. § 6-806, designate additional record to be included, and the trial court or this court may procure additional appellate record where it becomes necessary. Code Ann. § 6-805 (f). Where it affirmatively appears that failure to file the transcript of evidence (meaning a substantially true and complete record of the proceedings below so far as it impinges on the appellate decisional process) is the fault of the appellant, the appeal may be dismissed. Code Ann. § 6-809 (d). Further, Rule 11 (c) of this court provides that a failure of the appellant to comply with the provisions of the act relating to the filing and transmission of the transcript will be deemed to have been waived by the appellee where no objection is made and ruled on in the trial court prior to transmittal. This court rule is not apposite here for the reason that under the notice of appeal documentary evidence other than photographs should have been sent up, and the reporter states that it would have been except for instructions to the contrary given him by the appellant, unknown to the appellee, and not discovered until the transcript on appeal was examined by the latter's counsel for purposes of pagination.

Such a practice is obviously illegal and irregular. The burden is on the appellant to bring up so much of the record as is needed for the review of the alleged errors specified by him or risk an affirmance of the judgment

below. He also has the obligation of specifying in the notice of appeal what parts of the record or transcript he does not wish to have forwarded; if there is an objection to his decision it can be ironed out in the trial court, and if the appellee needs further record considered in making his own points he has a vehicle for its conveyance up here.

Because this question is presented for the first time and because the record before us runs to some 1,000 pages we are hesitant to impose the ultimate sanction of disregarding the enumerations of error, all of which require consideration of evidence. Although it appears that the plaintiff introduced 156 exhibits in evidence, some of these were photographs, and others are invoices and canceled checks which are in effect uncontroverted. The one serious omission to which our attention has been called is the contract on which the plaintiff relied for recovery; since this document also appears in the pleadings attached to the original petition, it is available to us and we assume it to be the same document as introduced in evidence. We do, however, reiterate that the burden is on the appellant in the first instance to bring up all record and evidence introduced under it bearing on a review of his enumerations of error, and that in particular it is his duty, if he wishes something omitted, to state it with precision in his notice of appeal.

2.  Ayers, the builder, entered into an oral agreement with the plaintiff appellee Adams to build a house for him much like Ayers himself had and according to a pencil sketch drawn by Adams, for a total price of $67,000, $1,000 being deposited as earnest money. The parties then signed a short form standard real estate sales contract showing these amounts and little else; the papers were taken to a bank which agreed to lend the requisite amount of money and which was furnished with some specifications on which its loan could be based, but which were not thereafter referred to by either of the primary parties. The loan was closed on August 12, 1971, and some few days thereafter Ayers obtained a Cobb County business license and commenced preparatory work on the lot. Adams hired an architect at Ayers' direction and the architect drew detailed plans and specifications from the original sketch. Adams then

wrote a letter dated September 1, 1971, which states in part: "In view of our recent discussions concerning the details connected with the construction of my home, and so as to clarify our understanding in respect to these various details, please accept this letter as a memorandum of our agreement so that this letter, together with the attached specifications and the attached plans, will constitute our contract for the construction of this home for a total turn key job for the sum of $67,000. So that we will both have a written record of our agreement and understanding, please. . . sign it at the end indicating your agreement and understanding." A list of 29 specific details follows, along with complete plans and specifications attached. Ayers received and signed the document at the job site on September 8, 1971. The record shows it to have been tendered in evidence without objection, and although Ayers now contends that it was handed him under the misrepresentation that it contained only their previous agreements whereas in fact it had much new material, there is no attack made to the effect that it is void for fraud or any other cause, but only that it attempts to change a prior oral agreement without additional consideration and is therefore nudum pactum and void for lack of consideration. However, both parties concede that there is no enforceable contract unless this written document comprises one. The evidence is implicit with the conclusion that there was an oral understanding of the type of house to be built, and that it would be built under the specifications of an architect to be eventually agreed upon. It is also implicit that until many details of the construction were reduced to writing there was simply no agreement at all because such details had never been discussed. This is not a case in which one contract is superseded by another any more than it is a case of a contract sought to be annulled on the ground of misrepresentation. It was presented to Ayers; he examined it and signed it. In doing so he agreed that the specific building instructions listed were "a written record of our agreement and understanding." "One who signs a written document without reading it, unless prevented from doing so by some fraud or artifice, . . . is chargeable with knowledge of its contents." *Musgrove v.*

*Musgrove,* 213 Ga. 610, 612 (100 SE2d 577). The document purported to be and was signed by both parties as constituting a reduction to writing of their verbal understanding of what was involved in the construction of this house. This being so, the defendant, equally with the plaintiff, was bound by its terms in the absence of fraud, accident or mistake.

3. In his instructions on the measure of damages if the jury should find for the plaintiff the court stated that "the plaintiff would be entitled to recover whatever sum you find to be the difference between the contract price and the reasonable and necessary cost price to the plaintiff to complete the contract — that is, to build the house in accordance with the terms of the original contract, whatever you find that contract to be." He also instructed them that they had the option to find that "the plaintiff ought to recover against the defendant whatever amount you find the plaintiff has been damaged." These instructions are clear and state a true rule of law. Instructions that "the plaintiff would be entitled to recover whatever sum you find to be the difference between the contract price . . . and the fair cost price to the plaintiff to complete the contract, that is, building the house" were approved in *Nash v. Truesdel,* 68 Ga. App. 376 (23 SE2d 93), an action by the owner after the contractor had abandoned the contract. See also *McKee v. Wheelus,* 85 Ga. App. 525 (69 SE2d 788); *Crowe v. Holloway Dev. Corp.,* 114 Ga. App. 856, 858 (152 SE2d 913). "For defective or unfinished construction the owner is entitled to judgment for the reasonable cost of completion in accordance with the contract." Fleming v. Twine, 58 A. 2d 498, 499; and see 75 ALR2d, Anno., p. 805 et seq. It is accordingly not accurate to contend that if the jury found the contractor had breached the contract the measure of damages should be reduced by whatever amounts the contractor has spent on the project over and above the reimbursement received by him, nor can it be said that the jury were erronously instructed on an "all or nothing" basis, since, had they found the plaintiff's monetary damage was in some other amount than that sued for — as, for example, if the plaintiff had failed to establish the necessary expenditures in connection with

the completion of the building by another contractor — they were instructed to find only the amount in which he had been damaged. Nor was the verdict excessive, since there is evidence to support the finding that the amount awarded the plaintiff is exactly the difference between the contract price and the amount spent.

4. Where one who contracts to perform work abandons or otherwise breaches his contract and the owner is forced to have the work completed by another, the owner must in the first instance make full disclosure of the amounts which he contends were necessarily spent to finish the work, but after this has been done the burden of proof shifts to the opposite party (the first contractor) if he contends the amount so spent is unreasonable or excessive, to prove this fact. *Crowe v. Holloway Dev. Corp.,* 114 Ga. App. 856, supra, p. 858. Enumeration of error 6, contending that the plaintiff did not carry the burden of showing he had "mitigated his damages" is without merit.

5. As to Enumerations of error 4, 5 and 7, the appellant is presenting to this court issues of fact (which party in fact first breached the contract; what was the quality of the work performed by Ayers, excessive verdict, etc.) which were presented to and decided by the jury on the basis of contradictory evidence. The verdict in the amount rendered was authorized but not demanded; it constitutes a jury resolution of conflicting theories and is thus beyond the reach of this court.

*Judgment affirmed. Hall, P. J., and Stolz, J., concur.*