60950. GAINESVILLE GLASS COMPANY, INC. v. DON HAMMOND, INC.

CARLEY, Judge.
Appellee-Don Hammond, Inc., general contractor for the construction of a recreational center at Lake Lanier Islands, instituted suit against appellant-Gainesville Glass Company, Inc., a purported subcontractor. According to the allegations of appellee's complaint, the appellant had orally agreed to supply and install the windows in the project for the sum of $2,003. However, when the appellee called upon the appellant to perform the window work the appellant refused to do so for the agreed contract price. When appellant refused to honor its agreement, the appellee secured the services of another glass company which supplied and installed the windows in the center for a cost of $7,253.95. The appellee instituted suit against appellant for $5,250.95, the difference between the ultimate cost to appellee of obtaining and installing windows in the center and appellant's alleged agreement to do the work for $2,003. The jury returned a verdict for the appellee in the full amount prayed for and judgment was entered thereon. Appellant appeals.

1. Appellant argues that the evidence "failed to show any agreement, contract, or meeting of the minds between the parties that would bind [appellant] at the time performance was de-

manded." Appellant's argument in support of this contention does not raise the issue of the statute of frauds. But see *Cason v. Thomas Cheely & Co.,* 6 Ga. 554 (1849); *Campbell & Co. v. Mion Bros.,* 6 Ga. App. 134 (64 SE 571) (1909). Appellant's arguments relate solely to the failure of the evidence to show the formal requisites of a contract. After a very careful and thorough review of the evidence, we agree that the evidence fails to support a finding of appellant's contractual liability to the appellee.

The appellee's evidence showed that it solicited and received an offer by appellant to do the window work on the center for $2,003. The appellee relying on this "offer" by appellant, submitted its bid on the project and was awarded the contract. The evidence further showed that the owner of the project wanted to have an option, to be exercised by April 1, 1978, to elect to delete the windows as an element of the construction contract. While appellant's evidence disputed the fact, the appellee's evidence showed that it contacted appellant and requested that such an option be extended to it. However, this was not an "acceptance" of appellant's original offer to do the work; it was a counteroffer by the appellee to appellant. *Winder Mfg. Co. v. Pendleton Co.,* 27 Ga. App. 476 (108 SE 823) (1921); *Estes Lumber Co. v. Palmyra Yellow Pine Co.,* 29 Ga. App. 15 (113 SE 821) (1922). The undisputed evidence further shows that appellant did not accept this counteroffer by appellee. Rather appellant made its own counteroffer, to the effect that it would agree to extend its offer with the option to cancel by April 1, 1978, in return for appellee's agreement that, if the option to cancel was not exercised, the final contract price for performance would be $2,003 plus any increase in the cost of materials which might occur before that date. While the evidence does show that the appellee relayed appellant's coun-teroffer concerning contract price *to the owner* of the project and that the appellee and the owner agreed *between themselves* that appellant's counteroffer would be accepted, there was absolutely no evidence by either party that the appellee ever communicated to appellant its acceptance of the counteroffer to grant an option in return for an assurance of material price increase protection. "[I]t is the law of contracts that an acceptance of a bilateral contract requires communication." *Hartford Fire Ins. Co. v. Steenhuis,* 115 Ga. App. 625, 626 (155 SE2d 690) (1967). Apparently, the appellee relies upon the fact that, as between itself and the owner, the owner accepted the counterproposal and agreed to pay any increase in material cost in return for the right to delete the windows from the project supplies the necessary contractual element of acceptance as between itself and appellant. However, the counteroffer by appellant was extend-ed to the appellee as general contractor not to the owner and,

apparently, the appellee's "acceptance" of the counteroffer was never communicated to appellant. "The offer can be accepted only by the person or persons to whom it is made." *Milner Hotels v. Black,* 196 Ga. 686, 691 (27 SE2d 402) (1943). The appellee's testimony that appellant "knew" it "had the glass work" even though the acceptance of its counteroffer was never communicated to it in "specific words" does not, in our opinion, show there had been a meeting of the minds so as to create a contractual relationship between the appellee and appellant. *Bush & Hattaway v. McCarty Co.,* 127 Ga. 308 (56 SE 430) (1907); *Saunders v. Vikers,* 116 Ga. App. 733 (158 SE2d 324) (1967). Nor does the fact that the appellee discussed whether the eventual terms of the agreement would be "satisfactory" to appellant before entering into the agreement with the owner supply the missing contractual element of acceptance by appellee of appellant's counteroffer. The eventual terms of the agreement were the terms of appellant's counteroffer and, of course, those terms would be "satisfactory" to it. This evidence shows no more than negotiations between appellant and the appellee, not acceptance by the latter of the former's counteroffer. *Frigidice Co. v. Southeastern Fair Assn.,* 58 Ga. App. 694 (199 SE 760) (1938). Compare *Wilson v. Martin,* 27 Ga. App. 549 (109 SE 294) (1921). Therefore, the evidence shows, at most, a counteroffer by appellant to extend to the appellee an option to purchase and have windows installed for an agreed price, the "acceptance" of which by the appellee was never communicated to appellant until long after the option date contemplated in the counteroffer itself had passed. This evidence shows no contract between appellant and the appellee. Cf. *Timmons v. Bostwick,* 141 Ga. 713, 714 (3) (82 SE 29) (1914).

Appellant further argues that, pretermitting the sufficiency of the evidence to show a contract the amount of damages awarded for the breach thereof is not supported by the evidence. The measure of damages here would be the reasonable cost of completing the window work in the center, that is, the difference between the contract price and the reasonable and necessary cost to appellee to have the windows supplied and installed in accordance with the terms of the original contract. *Palmer v. Howse,* 133 Ga. App. 619 (212 SE2d 2) (1974). The contract here called for appellee as general contractor and, ultimately, appellant as subcontractor, to "[f]urnish and install pavilion clerestory plexiglass panels...as indicated on the drawings." The evidence adduced at trial was that "plexiglass" is a trade name of a specific product made only by one manufacturer but is a term also used frequently to apply to acrylic products made by different companies. There was no conclusive evidence as to how much plexiglass panels increased in price prior to April 1, 1978. We,

therefore, assume that the first component of the measure of damages — the original contract price — was $2,003. The only documentary evidence offered by appellee as to "the reasonable and necessary cost" of having the windows furnished and installed in accordance with the original contract was the invoices of the supplier who eventually sold and installed the windows in the center. These documents referred to the materials actually supplied as "acrylics" or "lexan." Lexan apparently is a product significantly more expensive than other window products. The other evidence as to what window material was eventually installed in the center is utterly confusing. The material was variously identified at trial by different names, though no one ever identified it as "plexiglass" in other than its generic sense. The supplier of the materials, when questioned as to the cost of "similar amounts of . . . quarter inch plexiglass," as had been called for in the original contract, responded "Less than half [the amount charged for the materials actually supplied.]"

We find the evidence totally insufficient to support the verdict as to damages. Appellee was entitled only to be placed in the position it would have been had appellant performed its part of the contract. *Crawford & Assoc. v. Groves-Keen, Inc.,* 127 Ga. App. 646 (194 SE2d 499) (1972). The testimony and evidence concerning the "reasonable and necessary cost" of fulfilling the original contract all relate to the materials ultimately supplied and uniformly demonstrate that that material was significantly more expensive than that called for in the original agreement to supply "plexiglass panels." See *Investors Realty Co. v. Thomson,* 27 Ga. App. 700 (109 SE 524) (1921). The fact that the more expensive material supplied and installed in the center "complied" with the architectural specifications is of no moment.

Nor do we believe this issue is exclusively one of appellant's duty to mitigate its damage rather than an issue of appellee's evidentiary burden. "It was incumbent on the plaintiff to prove that each of the items of expense incurred by him . . . was necessary in obtaining such . . . as he was entitled to have under his contract." *Investors Realty Co. v. Thomson,* 27 Ga. App. 700, 702, supra. And, in our opinion, undisputed evidence that the materials used were more expensive than those called for in the contract does not meet this burden. *Investors Realty Co.,* supra. Compare *Crowe v. Holloway Develop. Corp.,* 114 Ga. App. 856 (152 SE2d 913) (1966); *Ayers Enterprises v. Adams,* 131 Ga. App. 12 (205 SE2d 16) (1974). If this were not so, the injured party could fulfill the terms of the contract by using more expensive materials than specified in the original agreement and have the breaching party assume both the burden of proving that the cost was not "reasonable and necessary" and of potential liability

therefor, resulting in an unwarranted windfall to the injured party. Where a party seeks damages for violation of a contract, the measure of damages is not what he has suffered by performing his part but what he has suffered by the failure of the other party to perform his part. *State Hwy. Dept. v. Knox-Rivers Const. Co.,* 117 Ga. App. 453 (160 SE2d 641) (1968). Damages are given as compensation for the injury sustained and "[a]n injured party can not be placed in a better position than he would have been in if the contract had not been breached." *Lastinger v. City of Adel,* 69 Ga. App. 535, 536 (26 SE2d 158) (1943). We, therefore, conclude that — in the absence of any evidence that the cost of the window materials used was "reasonable and necessary" to comply with the specifications and in view of the fact that all the evidence demonstrated that the cost of the material supplied was neither "reasonable" nor "necessary" to meet those specifications — appellee's documentary evidence relating to the cost of that material should not have been admitted and the verdict based upon the difference between that cost and the price originally agreed upon cannot stand. Cf. *Investors Realty Co. v. Thomson,* 27 Ga. App. 700, supra. There being no other evidence in the instant case as to how much it would have cost appellee to secure and have "plexiglass panels" installed in the center pursuant to the specifications, the judgment must be reversed for this reason as well. *Milledgeville Water Co. v. Fowler,* 129 Ga. 111 (58 SE 643) (1907).

2. Appellant urges that the trial court's charge on estoppel by representation was erroneous. Pretermitting any question of whether the charge as given on this issue was an accurate and full statement of the law of estoppel by representation *(Tinsley v. Rice,* 105 Ga. 285, 290 (31 SE 174) (1898); *Bell v. Studdard,* 220 Ga. 756, 760 (141 SE2d 536) (1965)), we find no evidence in the instant case which would authorize *any* charge on estoppel by representation. As we view the evidence, the only issue was whether appellant orally agreed to supply and furnish windows for an agreed price at a future date, i.e., whether appellant had entered into an enforceable contract with appellant. " 'The doctrine of estoppel by representation is ordinarily applicable only to representations as to facts either past or present, and not to promises concerning the future which, if binding at all, must be binding as contracts.' [Cit.]" *Lowry v. Norris Lake Shores Devel. Corp.,* 231 Ga. 547, 549 (203 SE2d 169) (1974). Compare *Wilson v. Martin,* 27 Ga. App. 549 (109 SE 294) (1921). Therefore, estoppel by representation had no application in this case and it was error to charge on that issue.

Nor do we find any evidence which would authorize a charge on estoppel by acts or conduct or estoppel by silence. *Evans v. Atlanta Paper Co.,* 21 Ga. App. 114 (93 SE 1023) (1917). " 'The doctrine of

estoppel in pais, proceeds wholly on the theory that the party to be estopped, has, by his declarations or conduct, misled another to his prejudice, so that it would be a fraud upon him to allow the true state of the facts to be proved.' [Cit.]" *Garmon v. Davis,* 63 Ga. App. 815, 819 (12 SE2d 209) (1940). Therefore, contract by estoppel presupposes that one party has a defense to the imposition of contractual liability but, by reason of his conduct, is estopped to assert it. See generally *Pitcher & Manda v. Lowe,* 95 Ga. 423 (22 SE 678) (1894). However, under the evidence in the instant case assuming that appellant's defense — that appellee did not timely communicate its acceptance of the counteroffer to sell and install the plexiglass — is accepted as true, there was no other evidence which would authorize a finding that appellant should be estopped to assert this fact or otherwise authorize the finding of a contract by estoppel. We fail to see how, if appellee never communicated its acceptance of appellant's offer to contract, the fact that appellant subsequent to April 1, 1978, merely took window measurements and suggested a different type of glass is, standing alone, sufficient to "lull the [appellee] into the belief that [its original] order was accepted and would be filled." *Evans,* 21 Ga. App. at 119, supra. Nor was there any evidence that appellant remained silent *after* appellee insisted that the work be completed pursuant to the alleged oral contract. Compare *Butler Bros. Inc. v. Goldstein,* 49 Ga. App. 109 (1) (174 SE 202) (1934). Therefore, there being no issue of estoppel in the case, it was error to charge on Code Ann. § 38-409. Cf. *Roberts v. McBrayer,* 194 Ga. 606, 616 (3e) (22 SE2d 165) (1942).

*Judgment reversed. Quillian, C. J., and Shulman, P. J., concur.*

DECIDED FEBRUARY 24, 1981.

*Jack M. Carey, Roland H. Stroberg,* for appellant.
*Frederick E. Link,* for appellee.