43014. STATE HIGHWAY DEPARTMENT v. KNOX-RIVERS CONSTRUCTION COMPANY.

ARGUED SEPTEMBER 7, 1967—DECIDED MARCH 11, 1968—
REHEARING DENIED MARCH 26, 1968—CERT. ▆▆▆▆▆

*Arthur K. Bolton, Attorney General, Richard L. Chambers,
Marshall R. Sims, Robert E. Sherrell, Assistant Attorneys General, John A. Sligh, Jr., for appellant.*

*Hull, Towill & Norman, Wyck A. Knox, Jr., Lawton Jordan,
Jr., for appellee.*

WHITMAN, Judge. ■ Whether the plaintiff's petition states
a cause of action, as against the defendant's general demurrers,
is to be resolved, as both parties point out in their briefs, by

ascertaining from the contract upon whom the duty fell to locate a new source of soil for the road building project when the first soil pit failed.

The plaintiff's position is best illustrated by certain allegations in its petition, to wit:

"(6) That the defendant provided petitioner with plans showing the location of a certain soil pit to be used for the acquisition of soil to be mixed with mortar and gravel which would then become part of the base or foundation for said road.

"(7) That petitioner began work under said contract, located its base plant near said soil pit, and attempted to use said pit which had been secured by the defendant; however, said soil pit was subsequently rejected by the engineers of the defendant contending that said pit was unfit for use in said road construction project.

"(7-a) That the defendant has failed to perform its duty under § 6.01, Paragraph B, Subparagraphs 3 and 5 (pages 67 and 68) of its standard specifications Volume I, dated May 1, 1956, which are by stipulation before the court, in that the defendant failed: (1) To eliminate the plaintiff's first source of soil material by written order and to substitute another source; (2) To identify a new source and to provide petitioner with an estimate of the quantities of clearing, stripping and overhaul required at the new source; (3) To order in writing that the pit plant be moved to another source selected by the engineer of the defendant.

"(8) That notwithstanding the duty upon the defendant to find an alternative soil pit location which would be suitable for use by the petitioner, the petitioner was forced, because of the defendant's nonfeasance, to obtain sufficient soil from a total of six (6) other soil pits at various locations, all of which involved considerable time and expense to the petitioner, and resulted in a higher unit price for said soil and a longer haul to point of consumption than originally anticipated by the petitioner at the time its bid was submitted and the contract entered into between petitioner and defendant.

"(9) That as a result of the failure of the defendant to locate satisfactory soil pits, and because the petitioner was forced to

locate same in order to expedite the work under said contract, the petitioner suffered a work shutdown and delay during which its men and equipment assigned to its base plant operation could not be productively used and as a result petitioner was penalized for a delay of seventy-four (74) calendar days."

The provisions of the contract relating to the difficulty encountered on the project are found in the Highway Department's Standard Specifications, as amended by a Special Provision, and read as follows:

"§ 6.01 Source of Supply and Quality of Materials: The source for each of the materials specified shall have been approved by the Engineer before delivery is started. Only materials meeting these specifications shall be used. If it is found after trial that sources of supply previously approved do not produce uniform and satisfactory products, or if the product from any source proves unacceptable after approval, the contractor shall furnish materials from other approved sources, except as provided in Article 6.01 b, below. . .

"b. *Sources of Materials Outside the Right-of-Way:* Earth materials obtained from sources outside the right-of-way may be used for barrow, subgrade treatment, base material, shoulders and for any other use for which they are specified. The provisions of 6.01 b apply to all of these uses.

"It is the intent of this Article that the department, having investigated sources of all earth materials required, is best qualified to determine which sources will be used. The department will not approve any sources of such materials not shown on the plans, before bids have been read publicly.

"This Article does not apply to local sources of materials for Portland Cement Concrete or Bituminous Plant Mix, nor to quarry sites.

"1. Method of Providing Sources: Payment of Royalties: (a) Information on Plans: The sources of local material will be shown on the Plans, and the amounts of royalties and other costs and conditions of acquisition of the material from the owner will also be so shown. The Plans or Special Provisions will also contain an estimate of the quantity of material required from each source and will show where the material is to be placed in

the finished work. They will also contain an estimate of the quantities of Clearing and Grubbing, Stripping Excavation, Overhaul and Special Overhaul for each source separately. . .

(b) Options: The Department will obtain all necessary options from the owners.

(c) Payment of Royalties: The Contractor shall pay to the owners of the pits used, all royalties and other costs, promptly, and shall meet all other conditions agreed upon with the owners, if there are any, pertaining to the acquisition of the pits actually used, and shall, before final payment is made, submit to the Engineer satisfactory evidence that he has done so. The Department will not make any separate payment to the Contractor for these costs of acquisition, and the Contractor is instructed to include them in the unit prices bid for the Pay Items to which they apply.

"2. Haul Roads: No separate payments will be made to the Contractor for construction or maintenance of any roads for hauling. The cost of haul roads shall be included in the prices bid for other Pay Items pertaining to this part of the Work. ...

"3. Substitution of Sources of Materials: The Engineer has the authority to eliminate any source of material shown on the Plans or in the Special Provisions and, by written order, to substitute other sources as may be to the advantage of the Department. Such substitutions may be made at any time before the Contractor's plant has been delivered at the source to be eliminated. The written order will identify the new source and will contain an estimate of the quantities of clearing, stripping and overhaul required, and all of these quantities will be corrected for the new source. The new estimate will replace the old estimate, and the unit price applying to the work will not be changed because of such substitution.

"If, after the Contract is awarded, the Contractor wishes to substitute other sources, and if the materials in these sources are equal to or better than those specified, and if the cost to the Department does not exceed that specified in the Contract, they will be accepted. The Engineer is the only judge as to the quality of materials to be substituted.

"4. Responsibility for Amount and Quality of Materials: The

Department does not guarantee that the quantity or quality of acceptable material required can be obtained from any designated source, and the failure of such designated sources to contain material in sufficient quantities or of acceptable quality shall not be the basis for any claim against the Department for extra compensation not provided for herein.

"5. Pit Moves Due to Failure of Designated Sources: When the Engineer determines that the Contractor has obtained all the acceptable material from a designated source and the amount of acceptable material thus obtained is insufficient to complete the work between the stations for which the source was designated, the Engineer will order in writing that the pit plant be moved to another source selected by the Engineer. . ."

We turn now to the blueprints or plans for the project. Sheet No. 30 of 101 total is entitled "Pit Location Sketch and Special Overhaul Chart F-003-3(14) Clark-Madison" and contains information in accordance with § 6.01 b of the Highway Department's Standard Specifications (set forth above). Specifically, a soil pit is identified thereon by showing its owner as C. D. Hix and its location as being 0.25 miles along a county road leading to Athens from the point where such road intersects "Old Hull Road." Old Hull Road runs within 1,000 ft. and parallel to the highway project in the vicinity of the aforementioned intersection.

Also, in accordance with the Standard Specifications, the following information is set forth with regard to the soil pit: "Quantity Available—75,000 Cubic Yards; Type Material—Selected Barrow; Material to be Used for Graded Aggregate Base, Graded Aggregate Sub-Base, Shoulder, Subgrade Treatment and Surfacing; Pit Area—8 Acres ±; Clean & Grade Required—3 Acres ±; % Oversize—None; Depth of Overburden—None; Average Depth Material—6.0 ft.; Property Owner—C. D. Hix; Date Optioned—June 1, 1964; Price per Cubic Yard—$0.05 (five); Date Expires—Dec. 31, 1965; Remarks—All pit slopes to be 3:1. Contractor to notify property owner prior to removal of soil. This pit also located 600 ft. Lt. of Sta. 294+00 on F-002-5(2) Clarke. Samples were submitted for U-003-3(3) Clarke."

Also contained on Sheet 30 is a "Special Overhaul Chart" which is simply a chart for arriving at, in layman's language,

over what distance the amount of dirt required must be hauled. The end result is a total amount of cubic yards of dirt per one-half mile hauled which is a unit of measure for bidding and other purposes. The Special Overhaul Chart was calculated taking into account the use of the soil pit under discussion.

The only remaining information on Sheet 30 is a notation appearing in parentheses under the sketch of the pit location which reads: "(This pit is shown as a possible source of material.)"

■ The defendant's first five enumerations of error are all addressed to the overruling of its general demurrers to the petition.

Simply stated, defendant's position is that the contract between the parties did not require any affirmative action by the defendant to locate a new source of soil when the original source failed, rather plaintiff assumed this contingency under the contract and had the responsibility of locating and furnishing acceptable material. In support of this position defendant contends that the words "(This Pit is Shown as a Possible Source of Material)" appearing beneath the Pit Location Sketch on Sheet 30 of the plans prevent the pit from being considered a "designated source," that for such reason § 6.01 b 5 of its Standard Specifications is not applicable, that no duties arose on its behalf by virtue thereof, and that its general demurrers should have been sustained.

The court is unable to agree with the defendant. In construing contracts, the fundamental rule is to ascertain and give effect to the intention of the parties. *Brooke v. Phillips Petroleum Co.*, 113 Ga. App. 742 (2) (149 SE2d 511); *Code* § 20-702. It appears from the contract, by virtue of including therein § 6.01 of the Standard Specifications and Sheet 30 of the plans, *which the court has noted in Division 1 was prepared in complete conformity with § 6.01*, that the soil pit in question was definitely contemplated by the parties as a source of soil for the project. This, in the court's view, made the soil pit a "designated source" within the meaning of § 6.01 b 5 of the Specifications. This being so, it became the defendant's duty through its engineer to "order in writing that the pit plant be moved to another source selected by the Engineer" if the soil pit was rejected as alleged in the petition.

■■ Defendant also contends, notwithstanding whether there was a breach and a delay caused by defendant, that the rental value of idle equipment and payroll expenses for idle labor during such period are not recoverable items as a matter of law, and that its general demurrer addressed thereto should have been sustained.

As with any claim for damages resulting from breach of contract, to be recoverable the damages must be such as arise naturally and according to the usual course of things from the breach, and such as the parties contemplated would be the probable result of a breach. *Code* § 20-1407. If the damages claimed are remote or consequential, they are generally not recoverable unless they can be traced solely to the breach or unless they are capable of exact computation. *Code* § 20-1406.

The petition alleges that the men and equipment were devoted exclusively to the project and could not be productively used during the period of delay caused by the defendant. The expense of labor and equipment is a fundamental consideration in highway construction, as important perhaps as the cost of the building materials. We cannot say that the cost of labor and equipment which are capable of exact computation, if occasioned unnecessarily by the breach as alleged in the petition, are too remote or consequential to be recoverable.

We do not consider the case of *Darlington Corp. v. Evans*, 88 Ga. App. 84 (76 SE2d 72), relied on by defendant, to be inconsistent with our holding here. The *Darlington* case held that where a petition seeks only the recovery of special damages and none of the items sought are properly recoverable under the law and the facts alleged, a general demurrer will lie. Specifically, that case held that losses and expenses incurred by one in preparation for performance under a contract of employment, e.g., the sale of one's property at less than market value in preparing to move to a new location under a contract of employment, are special damages and are not recoverable in the absence of a claim for damages arising from breach of the contract proper, e.g., loss of salary due under the contract. "Where a party seeks damages for the violation of a contract by the other party, the measure of his damages is not what he has suffered by per-

forming his part, but what he has suffered by the failure of the other party." *Pope & Fleming v. Graniteville Mfg. Co.*, 1 Ga. App. 176 (2) (57 SE 949), and citations. The petition in the present case sufficiently alleges damages suffered by failure of the defendant to perform and the general demurrer on this ground was properly overruled.

■ The contract required the work to be completed in not later than 200 working days and that for exceeding the time allowed the engineer was authorized to order withholding a certain amount as liquidated damages for each extra day required and, further, that the engineer's decision as to the amount withheld was presumed to be reasonable.

The petition alleges that the defendant's engineer *erroneously* withheld, as liquidated damages, portions of the progress payments due under the contract for completed work; that such was due to the use of calendar days rather than working days in the calculations; that defendant, in recognizing said error, did refund the penalties resulting from said error; that petitioner is entitled to interest for the periods such payments were due and withheld; and that defendant is still penalizing petitioner on the basis of 13 days' delay, but that petitioner is responsible for only 11 of the 13 days and is entitled, therefore, to a refund of 2 days' penalty with interest from the date due.

· The defendant contends that its general demurrer to these claims should be sustained because under the terms of the contract the contractor obtains no right to any payments until the engineer has determined that the same are due; that, inasmuch as the engineer had not so determined, whether rightly or wrongly, the petitioner had no right to such payments. Therefore, defendant says, citing *Code* § 57-110, that petitioner has no claim to interest on liquidated damages erroneously withheld since defendant was not liable for payment of same until its engineer had so determined. This simply begs the question. Section 5.01 of the Standard Specifications, from which the defendant draws the above construction, is entitled "Control of the Work." It provides that the engineer's decision shall be final on all questions related to interpretation of the specifications and plans as to acceptable fulfillment of the contract;

that the engineer determines, as final, the *qualities* of the several kinds of work performed and materials furnished which are to be paid for under the contract, and the contractor has no right to receive any money due under the contract until the engineer makes his determination.

In our view the specifications do not preclude putting in issue the correctness of the engineer's *reason* for assessing liquidated damages. Indeed § 8.09 of the Standard Specifications, as revised, entitled "Failure or Delay in Completing Work on Time," provides that: "*[n]o liquidated damages shall be chargeable for any delay in the final completion of the work by the Department due to any unreasonable action, negligence, omission or delay of the Department.*" (Emphasis supplied.)

We hold the claims for liquidated sums alleged to be erroneously withheld, and the claims for interest thereon from the dates such sums were due until paid, are valid claims in law sufficient as against general demurrer. See *Code* § 20-1408.

■ Defendant's five remaining enumerations of error relate to the overruling of five of its special demurrers. These demurrers attack certain paragraphs of the petition as being conclusions or vague and indefinite. We have reviewed these allegations and find them to be sufficiently definite and properly supported by other specially pleaded facts in the petition. *Marietta Realty &c. Co. v. Reynolds,* 189 Ga. 147 (4) (5 SE2d 347).

Certain of these demurrers also specifically question the right of petitioner to recover for interest on the liquidated damages alleged to have been erroneously withheld, i.e., "that interest is due only when provided by contract or statute." The defendant in this suit holds the same status as any other litigant. "The doctrine of sovereign immunity is not applicable in an action against the State Highway Department based on a breach of its contractual obligations." *State Hwy. Dept. v. W. L. Cobb Const. Co.,* 111 Ga. App. 822 (1) (143 SE2d 500). This being so, defendant, as any other litigant, would be liable for interest as follows: "In all cases where an amount ascertained would be the damages at the time of the breach, it may be increased by the addition of legal interest from that time until the recovery." *Code* § 20-1408.

The court did not err in overruling defendant's special demurrers.

· *Judgment affirmed.* *Bell, P. J., and Pannell, J., concur.*