In re Willie N. SCOTT, Bessie
M. Scott, Debtors.

Willie N. Scott, Bessie
M. Scott, Movant,

v.

Wells Fargo Home Mortgage,
Inc., Respondent.

No. 01–41914.

United States Bankruptcy Court,
M.D. Georgia,
Columbus Division.

June 6, 2002.

Kristin Smith, Columbus, GA, trustee.

Sam D. Hart, Jr., Columbus, GA, for Debtors.

### MEMORANDUM OPINION

JOHN T. LANEY, III, Bankruptcy Judge.

On April 15, 2002, the court held a hearing on the motion of Willie and Bessie Scott ("Debtors") to compel Wells Fargo Home Mortgage, Inc. ("Respondent") to pay the premium on a mortgage insurance policy. At the conclusion of the hearing, the court took under advisement the issue of whether Debtors are entitled to recover attorney fees from Respondent. The parties were given an opportunity to submit briefs. After considering the evidence, the parties' oral arguments and briefs, and the applicable statutory and case law, the court will deny Debtors' request for attorney fees.

### FACTS

On or about February 4, 1987, Debtors purchased real property located at 2405 Dawson Street, Columbus, Georgia, 31903 ("property"). This purchase was financed by a loan from Georgia Federal Bank, FSB. Debtors granted to Georgia Federal Bank, a security interest in the property by executing a Security Deed. (*See* Debtors' Motion, Doc. # 12, Exh. "A"). The mortgage was later acquired by First Union Mortgage Corporation ("First Union"). Sometime after 1995, Respondent acquired the mortgage. Apparently, these transfers of Debtors' mortgage to First Union and subsequently, to Respondent were a result of an assignment or these entities becoming successors in interest.[1]

On or about September 27, 1995, Debtors purchased a Disaster Mortgage Pro-

---

1. Although the parties do not dispute that Respondent acquired the Mortgage after 1995, the court notes that Debtors' schedules reflect that Debtors incurred their indebtedness to Respondent in 1989. (*See* Schedule "D").

tection Policy ("DMP") from Ace USA ("Ace"). The DMP provided for a payoff of the mortgage in the event of certain defined disasters which rendered the property uninhabitable. The premium for the DMP was $3.23 per month.

On August 1, 2001, Debtors filed a voluntary petition under Chapter 13 of the Bankruptcy Code ("Code"). In a letter dated November 30, 2001, Ace notified Debtors that effective January 1, 2002, the DMP would be canceled for non-payment of premiums. (*See* Doc. # 12, Exh. "B").

On December 12, 2001, Debtors filed a motion to compel Respondent to pay the DMP premium. On January 16, 2002, Respondent filed a response. Although Debtors had already filed their motion, they sent a letter to Respondent indicating that they would have to "seek a ruling" from the court if Respondent did not reinstate the DMP. (See Doc. # 17, Exh. "2"). After several continuances, the court held a hearing Debtors' motion on April 15, 2002.

According to Debtors, the Security Deed requires Respondent to remit payments to Ace from escrow. Debtors argue that Respondent's failure to make these payments creates a false mortgage default. Therefore, Debtors allege that this conduct is an attempt by Respondent to collect on a prepetition debt.

Respondent, however, contends that it had a right to terminate payments to Ace in spite of the Debtors' bankruptcy. Respondent argues that it terminated payment to Ace because of Debtors post-petition default, not for Debtors failure to make payments on a prepetition debt. Respondent also asserts that it has no duty to pay DMP premiums through escrow because the "mortgage insurance payments" to which the Security Deed refers do not apply to the DMP payments. (Doc. # 12, Exh. "A", para. 2). Basically, the DMP

was not an item required to be paid through escrow. The DMP was a policy which Debtors voluntarily purchased. Had the DMP been a requirement pursuant to the Security Deed as Debtors assert, the policy would have been in effect since 1987, when the Security Deed was originally executed.

On or about March 1, 2002, Respondent reinstated the DMP by paying the premium. Therefore, Debtors concede that their motion is now moot. However, the issue of whether Debtors are entitled to attorney fees has not been resolved.

Debtors argue that bringing this motion and litigation were the only means they had to force Respondent to reinstate the DMP. Accordingly, Debtors contend that they are entitled to recover $921.78 in attorney fees from Respondent. This amount represents 7.2 hours at $125.00 per hour plus out-of-pocket expenses of $21.78.

Respondent argues, however, that there was no need for Debtors to bring this motion. Debtors never contacted Respondent upon receiving the notice of cancellation to explain that post-petition payments were to be funded through the Chapter 13 Trustee's office. Had Debtors attempted such contact, Respondent submits that this issue could have been resolved easily without litigation. Furthermore, it is agreed that neither the contract nor the Code authorizes attorney fees in a motion to compel proceeding. Accordingly, Respondent argues that Debtors should not be allowed to recover attorney fees.

### DISCUSSION

Under the "American Rule," "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Howev-

er, wilful violation of a court order, bad faith or oppressive conduct, or recovery of a common fund for the benefit of others may operate as an exception to the American Rule. *See id.* at 243 n. 6, 95 S.Ct. 1612. Also, the Court has recognized statutory or contractual provisions which authorize attorney fees to the prevailing party as exceptions to the American Rule. *Id.*

■ In this case, the only possible exception is whether there is an applicable statute authorizing attorney fees. Therefore, the court must determine whether federal or state law would govern. This inquiry depends on whether the underlying dispute involves a question of state contract law or solely a question of federal bankruptcy law. *See BankBoston v. Sokolowski (In re Sokolowski)*, 205 F.3d 532, 535 (2d Cir.2000); *see also Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 741 (9th Cir.1985) (noting that state law applies with respect to attorney fees in breach of contract disputes).

Because this issue involves a dispute over Respondent's obligation pursuant to a provision in the Security Deed, the court finds that this issue amounts to a breach of contract dispute. Because the Security Deed was executed in Georgia and concerns Georgia real estate, Georgia law is applicable.

■ Debtors rely on O.C.G.A. sections 13–6–9 and 13–6–11. O.C.G.A. § 13–6–9 provides that "[a]ny necessary expense which one of two contracting parties incurs in complying with the contract may be recovered as damages." Typically, Georgia courts have interpreted this code section to apply to those "reasonable and necessary costs" of fulfilling the contract. *See Gainesville Glass Company v. Don Hammond, Inc.*, 157 Ga.App. 640, 642, 278 S.E.2d 182, 185 (1981); (citing *Crawford & Assoc., Inc. v. Groves–Keen, Inc.*, 127 Ga. App. 646, 194 S.E.2d 499 (1972)). This

means the measure of damages suffered by the failure of one party to perform its part to the other party. *See id.* (citing *State Highway Dep't v. Knox–Rivers Constr. Co.*, 117 Ga.App. 453, 160 S.E.2d 641 (1968)).

■ The pertinent question is whether "damages" in O.C.G.A. § 13–6–9 encompasses attorney fees, however, the court does not need to get to that inquiry. As the court in *Gainesville Glass* held, the plaintiff has the burden of proving that the items of expense it incurred were necessary under the contract. *See id.* As Respondent points out in its brief, Debtors have failed to show that Respondent even had a duty under the Security Deed to pay the premium. In the absence of evidence that Respondent had such an obligation under the Security Deed, the court finds that Debtors have failed to meet their burden under this subsection.

■ The other subsection on which Debtors rely provides that:

> The expenses of litigation generally shall not be allowed as a part of damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

O.C.G.A. § 13–6–11. The law is clear that an award of attorney fees under this statute are "ancillary and recoverable only where other elements of damages are recoverable." *Barnett v. Morrow*, 196 Ga. App. 201, 202, 396 S.E.2d 11, 12 (1990); *See also Cleary v. Southern Motors, et al.*, 142 Ga.App. 163, 165, 235 S.E.2d 623, 625 (1977); *Willis v. Kemp*, 130 Ga.App. 758, 761, 204 S.E.2d 486, 490 (1974).

The court acknowledges those cases which allow the recovery of attorney fees in equity where no monetary damages were recovered but equitable relief such as an injunction or specific performance was granted. *See Clayton v. Deverell,* 257 Ga. 653, 655, 362 S.E.2d 364, 366 (1987); *Golden v. Frazier,* 244 Ga. 685, 687, 261 S.E.2d 703, 705 (1979); *Adams v. Cowart,* 224 Ga. 210, 215, 160 S.E.2d 805, 809 (1968).

However, in those cases, the plaintiffs prevailed and obtained the equitable relief which they sought. "There is no authority for the proposition that merely seeking equitable relief, which for whatever reason is unobtainable, entitles one to recovery under O.C.G.A. § 13–6–11." *Barnett,* 196 Ga.App. at 203, 396 S.E.2d at 13.

■ In the instant case, there is no evidence demonstrating that Debtors would have prevailed in their motion to compel. Merely because Debtors sought such relief which became moot when Respondent agreed to reinstate the premium does not amount to prevailing as defined under the cases.

As to the other arguments under O.C.G.A. § 13–6–11 asserted by Debtors, they are likewise unpersuasive. Debtors argue that Respondent was stubbornly litigious and there was no bona fide dispute as to Respondent's obligation under the Security Deed.

■ First, a refusal to pay a disputed claim or debt is not the equivalent of being stubbornly litigious. *See Gordon v. Ogden,* 154 Ga.App. 641, 642, 269 S.E.2d 499, 501 (1980) (holding that a refusal to pay a disputed claim is not equivalent to stubborn litigiousness nor does it amount to unnecessary trouble and expense); *Palmer v. Howse,* 133 Ga.App. 619, 621, 212 S.E.2d 2, 4 (1974).

In the case before the court, Respondent merely refused to pay a disputed claim.

The evidence demonstrates that there was a genuine dispute as to Respondent's liability under the Security Deed. Therefore, Respondent was merely refusing to pay the premium because it disputed that it had an obligation to do so. Accordingly, the court finds that Respondent was not being stubbornly litigious in this regard.

As to Debtors' assertion that there was no bona fide dispute, this is contrary to the evidence. At the motion hearing, Respondent argued that the language in the Security Deed was not applicable to the policy at issue. Therefore, a bona fide dispute remained as to whether Respondent had an obligation under the Security Deed to reinstate the policy. The fact that Respondent later agreed to pay the premium and reinstate the policy does not indicate that there was an absence of a bona fide dispute. Based on the evidence, the court finds that there was a bona fide dispute.

### CONCLUSION

The court finds that neither O.C.G.A. § 13–6–9 nor O.C.G.A. § 13–6–11 authorize Debtors to recover attorney fees. Under § 13–6–9, Debtors have failed to demonstrate that Respondent had a duty to pay the premium. Therefore, Debtors have failed to meet their burden to show that the motion to compel was a necessary expense.

The court also finds that Respondent was not stubbornly litigious as defined under § 13–6–11. Accordingly, the court will deny Debtors request to recover attorney fees from Respondent.

An order in accordance with this Memorandum Opinion will be entered.